*Tilghman C. J.
after stating the facts, delivered his opinion as follows:—
I will first consider the ejectment against Vandyke, because his title differs in one important ieature, from that of Ireland.
The subject may be divided into three questions. 1. Had the administrators cum testamento annezo a power to sell these lands ? 2. If they had not, are there any equitable circumstances, which according to established principles would induce a court of chancery to issue an injunction to prevent *37 the plaintiff’s recovery? "Was it necessary for the plaintiffs to do any and what acts which they have omitted, prior to the commencement of their action?
1. If the administrators had power to sell, it must be either by common law or act of assembly. By the common law they certainly had no such power. The testator reposed a personal trust in his executors, he placed confidence in their discretion because he knew them ; but he could know nothing of those persons to whom administration might be committed. It would be doing violence to his will, to say that he intended to give power to sell to the administrators. If this power then is not to be found in the will, they have it not at all; for as administrators they have nothing to do with lands. Then how stands this point on our act of assembly ? It has been contended that the administrator cum testamento annexo has power to sell the land by the act of 1715, and the act of 19th April 1794, sec. 17. As both these acts are expressed in the same manner, it will be sufficient to give the words of the latter. “ In all cases where the register hath used heretofore to grant administration, with a testament annexed, he shall continue so to do, and the will of the deceased in such testaments expressed, shall be performed and observed in such manner as it should have been, if this act had never been made.” It had been provided, in the parts preceding the seventeenth section, in what manner the estates of deceased persons should be distributed in case of intestacy; and tbe meaning of this section evidently is, that although the register may commit administration, yet the will of the testator is not to be infringed. The question is, what was the will of the testator? Was it, that the administrators own testamento annexo should sell his lands? No *such intention appears, and therefore the act of assembly has no bearing on the case.
2. Thus far my sentiments perfectly accord with those of the learned judge, before whom this cause was tried in the Circuit Court. I will now proceed to consider whether on principles of equity, the plaintiffs should be barred from recovery on their legal title. I should have been glad, if at the time when this land was sold, the administrators cum testamento annexo had possessed the same legal right to sell, which has been since given in such cases by the act of 12th March 1800 ; because I believe that a sale was necessary, in order to pay the debts of the testator, and that every thing was fair in the transaction. But that is not sufficient to sanction the proceeding. Although a sale was necessary, it was not necessary that it should be made by the administra *38 tors. The creditors might, have brought actions and obtained judgments against the administrators, and on executions issued against them, the land might have been sold in the usual course of law. If a man assumes a right not given him by law, his actions will not be validated by the purity of his intention, or the fairness of his proceedings. If A dies intestate, leaving infant children, and being considerably indebted, and his friend B without authority, sells his lands for the best price that can be got, and honestly applies the money to the payment of his debts, although he has a just claim to reimbursement from the children of A, yet I presume no one will assert that the purchaser can hold the land. Now in what does that case differ from the one before the Court ? In nothing, but that in the one, the vendor had no color of authority ; in the other, he had a color, and no more. In substance they are the same. It is certain that no court in the commonwealth had power to authorize a sale by the administrators. How then can any court confirm it? I know, that having no Court of Chancery, we notwithstanding adopt the Chancery law, and in general, consider a thing as done, which a Court of Chancery would order to be done. Eor instance, if A agrees with B for the purchase of a tract of land, enters into possession, and pays all the purchase money, we consider him in the same situation, as if he had received a conveyance from B, because B might be compelled in Chancery, to execute a conveyance. Pri"ciP]e not serve the defendant’s *purpose. A Court of Chancery, in a case like the would have appointed a trustee to sell the land of Moodie, but the trust might have been vested in any other person, as well as in the administrators cvm testamento annexo, and the sale would have been made under the control of the court. The administrators had no more right to sell than a stranger, until the act of 12th March 1800. In adopting the Chancery law, we must be governed by settled principles, or we shall be thrown into confusion. What would Chancery do in such a case as this? In the first place, they would consider who has the legal title. The answer would be, the plaintiffs. Then, had the defendants notice of that legal title ? They had, because they claimed under the will of Robert Moody. It was their misfortune to purchase a bad title. But the plaintiffs have derived considerable benefit by the application of the purchase money to the payment of debts to which the land was liable; here indeed arises an equity. It would be unjust that the plaintiffs should vacate the coutract and yet retain the consideration. This is what *39 they do not desire; for as I understand, they offered to refund the purchase money, and make compensation for any improvements, which increased the value of the estate; also to pay the interest, in case the profits received by the defendants had not been equal to it. Having made these offers, in what respect do they act unfairly, or on what principle are they to be deprived of their legal right ? I have been able to find no authority for an injunction in such a case. It is a circumstance in favor of the plaintiffs, that at the time of the sale, they were infants, and therefore incapable of objecting to the illegal proceedings of the administrators. They do not appear to have been guilty of any laches, after they were acquainted with their right. Some stress was laid by the defendants’ counsel, on the circumstance of the executors having approved of the sale. There is nothing in that. Having all renounced the trust reposed in them by the testator, their approbation was no further of consequence, than to afford evidence of the sale being a fair one. I have said, that an equity arose to the defendants, from the circumstance of the money paid by them having been applied to the payment of debts; they were entitled to a reimbursement, and a reimbursement was offered, but not till after the action was brought. This leads me to the third *question. "Was it necessary that the offer should nave been made previous to the commencement of the suit?
3. It is admitted, that there have been decisions at Nisi JPrius both ways. I am of opinion, that the plaintiffs having the legal title, had a right to commence their action, before they made a tender of reimbursement. The right to commence the action and to recover at law is incident to the legal title. The defendant is in the situation of one who files a bill in Chancery to prevent the recovery at law; and it lies on him to show such circumstances as make it against equity for the plaintiff to recover. These circumstances are shown on the trial, and very often they are not fully disclosed to the plaintiff until the trial. Indeed, until the defendant showed what he had done, it would have been difficult for the plaintiffs to know how much to tender. At all events, the defendant would be secured, by entering judgment on such conditions, as the court and jury might think equitable. I give no opinion how the law would be, in a case where the plaintiff had only an equitable title. There is no doubt, there would be much stronger reason, that he should offer before the commencement of the suit, to do every thing which it was incumbent on him to do, before he was entitled to the legal estate. It appears to me on the whole, that in the *40 ejectment against Vandyke, the verdict ought to have been for the plaintiffs.
The case of the plaintiffs in the other ejectment stands on stronger ground; for in addition to the reasons I have mentioned, there is this, that the purchase was made by David Ireland, one of the administrators; or at least by his son in trust for him, which amounts to the same thing. Now even if the administrators had power to sell, they ought not to have made the sale to one of themselves, because the power being joint, ought to have been executed by all of them; and (which is of far greater consequence) because the policy of the law foi'bids a person to be the purchaser of that which lie is appointed to sell. It requires but a small knowledge of the world, to be sensible of the wisdom of this rule. The person entrusted with the sale has’ so perfect a knowledge of the subject, and so great an opportunity of taking advantage, by appointing the time and place of sale, and employing the agents who conduct it, that to permit him to become the 'Purehaser, *would be placing too much confidence in the infirmity of human nature. I take the general rule to be, that if he will interfere in the purchase, he shall not be a gainer by it. If he sells the land again at a higher price, he shall account for the difference. I will not say that this rule admits of no exceptions; but I see nothing in the present ease which should make it an exception. Considering the very great amount of property which is exposed to sale by order of the Orphan’s Court, I am satisfied that it will produce great mischief, if administrators are permitted to be concerned in the purchase directly or indirectly. David Ireland has retained part of the land himself, and the .residue he has conveyed to his son, without any valuable consideration. If he receives his purchase money and interest, and a reasonable compensation for valuable improvements, he has no reason to complain.
I am, therefore, of opinion, that there should be a new trial in both cases.
Brackenridge J.
An objection has been made in both these cases, that the offer on the part of the plaintiff as to repayment, &c., ought to have been before the bringing the ejectment. It is a sufficient answer to this, that he could not know what to offer, or that he ought to offer any thing. It must be supposed to come out on the part of the defendant on the trial, that he the defendant had entered under the. idea of a purchase, and what the consideration had been ; for the plaintiff does not allege him to be his trustee, or to *41 have purchased from those who were. He treats him as a wrongdoer, with whom he has had no privity of contract. But it may be said the persons selling acted as the trustee of the plaintiff, or for the plaintiff, conceiving themselves such ; and some part of the purchase money has been applied to his use, and that in equity he ought to be accountable. But the time to make the offer in this case is, when the defendant has made out the fact, which the plaintiff cannot legally be presumed to know before it comes out in the evidence. The defendant having entered under those, who had at least color of trust, and having made improvements, which on recovery will come to the benefit of the plaintiff, he is bound in equity to allow for them, deducting rents and profits, Sugden 402, the amount of which he cannot know until *ascertained under the direction of the court. This by auditors or otherwise. All that he could do before verdict, was to file an engagement to this effect, and before judgment to perform it. It is true that before recovery, he ought to satisfy and do this equity, that is before judgment and possession given ; but I do not think that the not having done this or any part of it before ejectment brought, is in his way. It is not like a covenant to which he was a party, and where something is to be done by him; where he claims performance, or where he disaffirms, before he has a right of action. It is not a case of that nature, where there can be or ought to be a tender, or money brought into court. This must always depend on the nature of the case; and the impracticability of doing in the first instance, what ought to be eventually done, excuses. "Wise counsel will always advise such engagement to be filed on the trial, for they will not have great reason to expect a verdict without it; and the court before judgment will take care to see it done, for equity will not admit of gain on the one hand or loss on the other, under such circumstances. But it would seem to me that all this cannot be done by the plaintiff, nor ought it to be expected from him, before his ejectment, supposing him to have title; which leads to the consideration of that which is the main question in the case, the title to recover.
This is opposed by the sale set up by the defendant, made to him as he alleges, under the will of the plaintiii’s ancestor ; by which sale, if it can be supported, the plaintiff' is barred. What is there to impeach it ? A sale was directed by the will for the payment of debts. The maintenance of children was also a necessary object of such a sale. The estate was in debt, and the children young; the estate unproductive. Had there been an intestacy, and an adminis *42 tration simply, a sale must have been effected under the Orphan’s Court order, for the maintenance of children; or at the suit of the creditors for the payment of debts. In contemplation of this, it is to be presumed, a sale was directed by the will of the testator, and executors appointed. These renounced, and administration with the will annexed was committed by the register. A sale was made by two of these administrators, one or more of the executors who had refused the administration being consulted, and, as is alleged, approving of the sale.
*It is contended that administrators with the will annexed have no authority to sell, even where a sale is directed to be made. I incline strongly to think that they have authority, where a sale is directed by the will as in this case/or the payment of debts ; for this is an administration of the will. How can they pay the debts without having the means by the sale? Lands that are to be turned into chattels are to be considered as chattels, and would seem tobe equally the subjects of administration with the will annexed as a chattel. If lands with us are to be considered chattels for the payment of debts, why not liable to be sold as chattels? And when executors appointed refuse, why [cannot?] the administrators with the will annexed not act? It is not the case of an intestacy, where the Orphan’s Court can interfere. The only power then to make sale, is that of the administrators with the will annexed. If thi3 is not done, creditors must proceed against the estate, and costs be accumulated. Where an authority is given by the testator, but no appointment by express words, what persons shall sell the land? The law implies, that they shall do it, who are to pay debts, or distribute money. Pow. on Devis. 299. Is it not the same as persons not appointed, when those who are appointed refuse to act ? It is within the same reason, and I take it there is the same law.
But it is said that in England, the administrators with the will annexed cannot sell, even where the estate is to be turned into chattels; as for the purpose of an annuity or otherwise. 2 P. Wms. 808, is cited, where, on the executors refusing, and administration with the will annexed committed, and a bill filed by them, the heir was compelled to join in a sale. The compelling him to join with the administrators, may imply that of themselves they could not make a sale. But with us, what shall be done, where there is no power to compel, no Court of Chancery? Executors cannot be compelled to act, heirs cannot be compelled to join, trustees cannot be appointed. Hence a necessity which does not exist in *43 England of administrators with, the will annexed, acting as succeeding to the trust. There are changes made, which have relation to this point, by the laws agreed upon in England, and by the early laws of the province. Neal estate was made liable for the payment of debts; this would seem to carry with it a to administrators with the will annexed over *real estate, there being no chancellor to constitute trustees to manage a sale. It is expressly given and guarded to administrators in case of intestacy by the superintendance of tbe Orphan’s Court. But the ease of a will with the testament annexed is left to itself, which would seem to imply that the giving a power expressly in this case under any superintendance but that of their bonds to the register, and the being liable to be called to account as executors, was not necessary. There is no power in the case of debts or the maintenance of children by petition to the Orphan’s Court to order a saLe in this case. Is it possible to suppose that the law should have remained a century in that state, without a provision, unless such provision was thought unnecessary, and that administrators with the will annexed could make a sale as executors could have done. It was not until the 12th March 1800, that to remove doubts which seemed to be entertained on this head, an act was made expressly giving this power. To remove doubts, take notice. It is an act to explain and amend, and the preamble is in these words, “ whereas doubts have arisen in the construction of those existing laws of this commonwealth which relate to the power which executors and administrators with the will annexed, have to sell and convey the estates of their testators; and whereas the importance of the subject requires that those laws should be so explained and amended that persons appointed to execute the last wills and testaments of decedents, may know the extent of their powers, and be enabled fully to execute their respective trusts.” The doubts which the law explains are stated as having .arisen, which implies the having lately sprung up, in a case where doubts had not been entertained before. Nor is it only in the case of administrators with the will annexed, as recited in the preamble, that the law is explained and doubts removed, but in the case of one executor where there are more, or refusing, or dismissed, or discharged; or if all dismissed and letters vacated, and new letters are ordered, “ it shall and may be lawful for the administrators with the will aunexed, or the administrators de bonis non, or other persons to whom letters of administration shall legally issue, to sell, &c.” This, I take it, was what ought to have been laid *44 down by tbe courts of justice as what was the law before; an<^ I shall *consider it as what was the law before; and that in the case of only one or more administrators of the will annexed joining in the sale, the others dyiug or discontinuing the administration, by analogy to the law in the case of executors whose place they take, one or more may sell. For in the case of executors, where the authority is not a nude appointment, naked, and stripped of all other duty, and uncoupled with an interest which the executor himself has or which others have in his acting, such as the maintenance of children, the payment of debts, legacies, &c., if all the executors could sell, one or more could, unless indeed it appeared to be the intention of the testator, that the power of selling should be confined to the executors named. For this I take it is the law of England ; aud that the distinctions taken between appointment nominatim, and naked and coupled authority, which Hargrave, Co. Litt. 113, and Pow. on Dev. 292, have adverted to with some difference of opinion, will resolve themselves as these writers seem to admit, into a question of the intent of the testator ; and which principle the law of 12th March 1800 recognizes in the proviso, that “ nothing in this act, shall be deemed or taken to prevent any testator from directing by his or her last will or testament otherwise.” Had the testator constituted two or more executors, and directed especially that a sale should not he made but by all joining, in that case one could not sell; but if a sale became necessary to be made, and in consequence of the death or refusal of one to act, a sale could not be made at all, the chancellor in England must interfere by the appointment of trustees for this purpose. With us the same object would be attainable by the letters of administration with the will annexed; for executors refusing to act are as defunct executors; and if the body of testamentary trustees cease to be entire, and the act is not perfungible (if I may make a word,) but by the entire body, it is the same thing as if they were defunct. Pari ratione one of more administrators with the will annexed, in case of the others not continuing to act, may make a sale, provided indeed there is no surprise or fraud upon others of the administrators, who are liable by bond given to the register, and the purchaser is innocent, not having notice of the fraud. I will acknowledge that it is not easy to reconcile tire sale with a general rule tlmt all the administrators should have joined. *For if there be two or more executors, a sale or release by one of them, shall be good against the rest. But in case of administrators it is otherwise. 2 Black. Comm. 510. In *45 case of one of the sales also, that to Ireland, the sale was not only by two, but by two to one of the administrators them, selves. Even in the case of executors, “ albeit one refuse, yet the other cannot make sale to him that refuses, because he is party and privy to the last will, and remains executor.” Co. Litt. 112. And where the executor has taken upon him the administration he cannot refuse. The same with the administrator with the will annexed. He cannot renounce and rescue himself from his bond. This is the way of his becoming a stranger ipso facto, by the very act of the purchase. We are driven therefore to what I take to be the safest ground on which to rest this sale, and on which the judge who tried the cause, seems disposed to have rested it. It is also the ground which the counsel for the defendant have considered as the most maintainable, that is, that it was in fact a sale by executors. That notwithstanding they renounced, they still remained executors and could sell, having an authority coupled with an interest; that is, a duty to perform independent of the sale; for this goes to prove their appointment to be not as trustees merely for the purpose of a sale, but as executors ratione officii, where the authority survives, and where it is not entire. 2 P. Wms. 808, Co. Litt. 112, 118. That it was at least the act of the widow, would appear from her assenting to the granting the letters with the will annexed to the persons named, and this assent in writing, from her being present at the granting, from her being present at the sale and approving it, from her satisfaction expressed with the settlement of the administrators’ accounts, and actually receiving some of the money, and from the whole being applied to the maintenance of her and her children, and the payment of debts, going to the purposes of the will of which she was executor, and in which character she acted in fact, in directing and superintending the administration in the name of others. Nor was the widow alone, but in equity the case is strengthened by the concurrence of another of the executors. Doctor Plunket, who, dissatisfied probably at the conduct of the widow in the first instance, in concealing the will, or for other reasons, had with the others renounced the out letters as executors, *yet would seem to have interested himself on behalf of the administration. Had a sale been made by the widow, or by another under her parole assent, much more her assent in writing, even before probate of the will, and before letters issuing, and the money had been received and applied for the purposes of the will, and the heirs maintained during a minority, which could not otherwise have *46 been provided for, and a purchase for a valuable consideration and great improvements made and great length of time elapsed, before the purchaser could reasonably have expected that the validity of the sale would be called in question, would it not form such an equity case, out of all general rules, as a chancellor would support? It would be against good conscience on the part of the heirs to claim the land, supposing the sale to have been without fraud or great negligence in conducting the sale, so as to have affected the value. The implication of assent from standing by and seeing money paid, and even receiving it and witnessing writings, or seeing improvements made, cannot in strictness bar infants; yet these or any one of them will form an equitable circumstance in a chancery case; and if any case was ever strong enough in equity to bar heirs, who had been infants at the time of the sale, and have been silent, living near, seeing, and even assisting at the improvements, one of them, this is a case of that nature. It would seem to me that in such a case a chancellor would compel the heir to convey to the defendant for security of title. Yet were I even bound to say in directing a jury, that the sale was not such as gave the estate legally to the defendant, or that a chancellor would be bound to decree a conveyance from the heirs, (for the discretion of a chancellor is per legem, and he must be bound by general rules also to some extent, and cannot just say, I take this case by itself without regard to any general rules,) yet the province of a jury is more extensive, and the equity of the particular case can be distinguished by them, without saying what general rule it is that is applied. Plence the advantage of our tribunals, of court and jury deciding in cases of'law and equity. For even where the general rule in the law of exceptions, which is what is meant by equity, is in favor of the plaintiff, and a judge would be bound to lay down the general rule to the ÍU1Y’ leaving the application of the facts to *them ; yet where a party has obtained a verdict in a hard case, and the address is to the discretion of the court to set it aside, I feel myself at greater liberty.
I find therefore nothing exceptionable whereon to support the motion for a new trial.
The Court being thus divided upon the general question of a new trial, of course the appeals failed.
Judgment affirmed.
[Cited in 5 S. & R. 172; 9 id. 92; 12 id. 379 ; 1 R. 376 ; 1 Ash. 311 ; 5 W. 166, 171; 10 id. 140; 2 Wh. 62 ; 4 W. & S. 22; 6 id. 21, 38; 5 C. 506; 10 id. 31.]