## ¿ Menges *against* Oyster.

A sheriff's sale upon a mortgage confers no title on the purchaser to that part of the land which lies beyond the line of the county where the sale was made; nor does it aid the title that the mortgagor was present at the sale, and made no objection, but on the contrary encouraged it, by bidding himself, and after the deed was acknowledged, surrendered the possession, and looked to the payment and satisfaction of the mortgage and other liens covered by the purchase money.

**WRIT OF ERROR** to the Common Pleas of *Northumberland* county.

This was an action of ejectment by Elizabeth Menges and others, heirs at law of Solomon Menges, deceased, against George Oyster for 300 acres of land. The plaintiffs proved the original title to have been vested in Solomon Menges, deceased, and that they were his children and heirs at law.

The defendants then offered in evidence a mortgage of Solomon Menges to William Parker, dated 1st of June 1833, to secure the payment of $800, " of all that tract of land situate in Turbet and Muncy Creek townships, in the counties of Lycoming and Northumberland, containing 408 acres" and recorded in Lycoming county the 11th of June 1833. A judgment upon this mortgage, in Lycoming county, to December term 1838, for $595.98 ; a *levari facias* to April term 1839, upon which the land was levied, advertised as described in the mortgage, and sold to George Oyster for $886 ; and to accompany this evidence with proof that the mortgage and sale embraced the entire tract of land, lying partly in Northumberland and partly in Lycoming ; that the whole tract was advertised for sale by the sheriff of Lycoming county, without any notification by Solomon Menges, or other person, of exception, reservation or want of authority in the sheriff to sell. That Solomon Menges attended the sale in person, and bid personally, or by his son John, then a minor, and living with his father, Solomon thus encouraging the said sale, and not intimating any objection thereto ; that defendant bid also, and finally became the purchaser, Solomon Menges or his son being the next highest bidder. That after the sale Solomon Menges expressed his entire satisfaction with it, declared he was pleased that defendant had become the purchaser, and that he had paid the full value of the land. That the sheriff's deed was acknowledged in open court to the defendant for the entire tract without objection of any kind ; that defendant paid the purchase money to the sheriff, and that it was applied in discharge of the mortgage covering the whole tract and

[Menges v. Oyster.]

other judgments or liens against Solomon, on which satisfaction was entered on his requirement; that defendant went into possession of the tract on the delivery thereof by Solomon, and commenced improving thereon, preparing for the erection of a house thereon, and clearing a large field in that part in Northumberland county in full view of plaintiff's house. That he hauled wood very frequently from the clearing past the door of Solomon Menges, but that Solomon never intimated any claim to the land or defect in defendant's title, or opposed the improvement, but, on the contrary, exchanged a lot of land with defendant for a lot on that part of the said tract lying in Northumberland county, receiving the defendant's deed for it, based alone on the sheriff's title; and that after the sale Solomon refused to pay the taxes on that part of the land in Northumberland county, and referred the collector to George Oyster for payment as owner.

The plaintiffs objected to the whole of the evidence offered, on the ground that the sheriff of Lycoming county had no authority to sell the land in dispute which lay in Northumberland county, and that the evidence offered, if all true, would confer no title on the defendant. The court admitted the evidence, and sealed a bill of exception.

After this evidence was given, the plaintiffs gave evidence to prove that Solomon Menges was so intemperate in his habits as to be generally unfit to manage his business. The court thus instructed the jury:

"Conceding, for the present, that the sale in Lycoming is illegal, as to that part of the land situate in Northumberland county, still the payment of the money and its application to the satisfaction of the mortgage, with the assent of the mortgagor and mortgagee, under the circumstances stated and in evidence, create an equity in favour of the defendant, which entitles him to stand in the place of the mortgagee, and to hold the possession thus lawfully acquired until justice shall be done, or offered to be done to him. The plaintiffs cannot hold the land and the money both. The evidence given of the intemperance of Solomon Menges, without any proof of imposition practised by the defendant upon him, is not sufficient to discharge him from the obligations of equity. Intoxicated or sober, he was bound by the rules of good conscience. The court, therefore, instruct the jury, that under the evidence the defendant is entitled to a verdict."

*Donnel* and *Greenough*, for plaintiffs in error. To all judicial sales the rule of *caveat emptor* applies. 5 *Serg. & Rawle* 225; 11 *Serg. & Rawle* 124. The purchase is made from an officer, whose authority to make the sale is matter of record, open to the inspection of purchasers. And here it is contended, that a party defendant, by his conduct or acts, may extend the jurisdiction of

the court and its official process, and thus trample upon those
plain principles which govern such cases. What did the defend-
ant do? Acquiesce in the sale! express his satisfaction with it!
And what else could he do? He had no control over the subject;
his notice, or withholding of it, amounted to nothing. We have,
then, the case of a poor, ignorant and unfortunate defendant wit-
nessing the sale of his property, supposing it to be all lawful and
right, and not having intelligence enough during his life to under-
stand the subject. It is said, that after his death his heirs cannot
have the error corrected; equity will always take into considera-
tion the ignorance of the parties. 2 *Rawle* 90; 1 *Story's Eq.* 377;
1 *Fonb. Eq.* 137; 1 *Johns. Chan.* 512; 4 *Johns. Chan.* 70; 5
*Watts* 308.

*Jordan* and *S. Hepburn, contra.* It cannot be doubted that all
parties believed that the whole of the land was offered for sale,
and that the price bid was for the whole. Taking it for granted
then that the proceeding under which the sale was made was
irregular, cannot that irregularity be cured by the consent of the
only person interested? Suppose the defendant to have made a
written agreement reciting the fact that the sale was irregular
because the land lay in Northumberland county, but that he was
desirous to have it sold for the best price, that the mortgage and
judgments against him might be paid, and therefore that the pur-
chaser should have a good title to the whole under the sheriff's
sale; can it be doubted that the purchaser would have taken a
good title to the whole? And the case put is no stronger than
the one at bar. The defendant appears at the sale when the whole
land is offered for sale, he encourages bidders, he bids himself;
when the sale is made he expresses his satisfaction with it; he
receives the proceeds by having it applied to the payment of his
debts; he actually purchases part of the land founded upon this
sheriff's title; and after all this, it is said that his heirs, who, it is
to be remarked, cannot claim to have one spark of equity more
than their father had, are entitled to recover this land from one
who has honestly paid his money for it. 13 *Serg. & Rawle* 304;
6 *Watts* 60; 8 *Watts* 280; 1 *Rawle* 170; 4 *New. Ham.* 182; 7
*Serg. & Rawle* 467; 14 *Johns.* 446; 4 *Dall.* 436; 6 *Watts* 339; 6
*Watts* 92; 2 *Rawle* 90.

The opinion of the Court was delivered by
GIBSON, C. J.—It is an error to suppose that judicial equity is
as broad as natural justice. Duties of imperfect obligation are
too indeterminate in their principles and relations to be subject
to human cognizance; and for that reason it seems that more effect
was given to a naked moral obligation in *Moody* v. *Vandyke,* (4
*Binn.* 41), than any principle or precedent could be found to war-
rant. A purchaser at the sale of a testator's land by admin-

[Menges v. Oyster.]

istrators with the will annexed, who had no authority at that time to execute a testamentary power, was allowed to retain the possession, though the sale was void, till what he had paid was refunded; and the Chief Justice put the case of a voluntary sale by a friend without colour of authority, as an apposite one, inducing the same equitable right to reimbursement. Yet what is such a case but that of a man who has, for the best of motives, attempted to make himself the creditor of another by paying his debts without his assent, which is put to illustrate the necessity of a precedent request as the foundation of an *assumpsit* for money paid to another's use? It is not to be denied that such payment would be a consideration for an express promise; but as it would not raise a promise by implication of law, it is plain that it wants that legal sanction which is necessary to make it a matter of adjudication even for purposes of defence. It would be fallacious to suppose that it is insufficient for the implication of a promise only, because an action is usually founded on something more solid than an equity. *Assumpsit*, though in form an action on a promise, gives effect to the same principles that are administered through a bill in equity; and its sufficiency as a remedy has almost entirely withdrawn parol contracts from the jurisdiction of chancery. The point, however, seems to have been taken for granted, rather than adjudicated, in *Moody* v. *Vandyke*; but in *Walker* v. *Quigg*, (6 *Watts* 88), it was fully considered, and a different conclusion drawn. It was ruled that the children of a testator were not bound to reimburse purchase money applied to their fathers' debts by an executor who had sold the land under what was erroneously thought to be a testamentary power, because the payment was in fact a voluntary one.

In the case before us, the plaintiffs have a legal title; and if payment of their fathers' debts does not give the defendant an equity to control it, what else is there in the proofs? It is said that the father encouraged him to bid by concealing the fact that the part of the land in contest could not pass by the sale because it was not within the county, as well as by suffering his own son to bid; and that he confirmed the sale by having the proceeds applied to the liens, as well as by directing the defendant to take possession when the sheriff's deed was acknowledged.

What colour is there for the imputation of concealment? The very advertisement of sale, to say nothing of the mortgage, *scire facias* and *levari*, described the land as being in Northumberland and Lycoming counties; and the bidders were bound to take notice of it. Silence is not fraudulent where it is the offspring of ignorance; and it is, besides, not pretended that any one was misled by it. The misconception was not of the fact but of its effect; and here too the parties met on terms of the most perfect equality, for they were both profoundly ignorant of the extent of the sheriff's authority. Akin to the mortgagor's silence, but still

[Menges v. Oyster.]

less plausible in its supposed consequences, is his son's bidding by his direction, which could not prejudice his right because the sale was a valid one as to a part of the land, and a debtor may lawfully bid to preserve his property from going below its value. His position is one of compulsion, not of choice; and his bid is not that of a puffer, because it is not thrown in as a provocative.   In *Bramley* v. *Alt,* (3 *Ves.* 620), Lord Alvanley was of opinion that the owner may appoint a bidder to prevent a sacrifice of his property, even at a voluntary sale; for what is that, said he, but to set it up at a particular price?   Lord Rosslyn doubted, in *Connolly* v. *Parsons,* (3 *Ves.* 625, *note*), whether a purchaser can be defrauded, in any case, by the apparent eagerness of competitors, and professed great difficulty in being able to compass the reasoning that a bidder does not always follow his own judgment; but in *Smith* v. *Clark,* (12 *Ves.* 483), Sir William Grant said he was unwilling to go that length, or support a sale at which bidders were employed to screw up the price by the excitement of competition.   Yet he, too, admitted the legality of an owner's bid as a defensive precaution, notwithstanding the opinion of Lord Mansfield in *Bexwell* v. *Christie,* (*Cowp.* 396), that the owner may not bid on his own property, even to prevent it from being sacrificed. Those cases are stronger than this, inasmuch as the mortgagor had not a right to have the premises put up at his own price; and a right to bid at an involuntary sale is peculiarly necessary to prevent the success of a combination, such as there was in *Smull* v. *Jones,* (1 *Watts & Serg.* 128), to depress the price.

The other facts are posterior to the sale, and too inconsequential for a defence.   In procuring an appropriation of the proceeds and an entry of satisfaction, the debtor did no more, as he had done in directing his son to bid, than exercise a legal right.   In contemplation of law, the sheriff sold no more than was subject to his execution; and if he professed to sell anything else, it was the business of the purchaser to move the court to set the sale aside. He did not move, and the money was brought into court for distribution.   What was the debtor to do?   He had no choice but to treat the sale as an unexceptionable one; and he did no more. The same thing may be said of his direction to take possession. It was a ratification of the sale; but without a consideration for it, what is the worth of such a ratification?   It is not pretended that it was a benefit to the debtor or a prejudice to the purchaser. Neither singly nor collectively did these things furnish a defence; and the direction to the contrary was erroneous.

Judgment reversed, and *venire de novo* awarded.