## McLaughlin *v.* Shields.

1. An attorney is a competent witness for his client, after a contract rendering him interested has been rescinded.

2. A levy and sale of the estate of A., as tenant by the curtesy in certain land, passes no title, if he had the fee.

3. Mere acquiescence in such a mistaken levy and sale, will not conclude the defendant in the execution; to produce that effect, the mistake must have been brought about by the action of the defendant.

4. The want of an inquisition is not cured by showing that the land was held adversely to the title of the defendant in the execution.

5. Eighteen years' delay to enforce execution of a contract for the purchase of land, is not a bar to a suit for the land, where a large part of the price has been paid, and a judgment entered for the residue, the interest on which was more than paid by the rents or profits.

In error from the Common Pleas of Westmoreland.

Ejectment. In 1818 there was a partition in the Orphans' Court of certain land, and the several parcels were taken at the valuation by Samuel and Alexander Craig, the lessor of the present defendant, and they gave recognisances to pay to the other heirs their shares. The plaintiff's wife was one of the heirs, and party to the partition. The plaintiff purchased 200 acres of this land by parol, and entered into possession about 1819. From the written statements of the parties subsequently made, the purchase-money was $2600, being at $13 per acre. And there was paid on it $1639.

In 1823, Alexander and Samuel Craig brought an ejectment against Shields for this land. The cause was referred, and the arbitrators awarded for the plaintiffs, to be released on the payment of $961 and costs. At the next term, in 1824, the costs were levied and possession was delivered to Craig, the present defendant's lessor, under an *habere.*

At the next term Shields brought assumpsit against the two Craigs, and from the award therein, &c., it was evidently to recover back the purchase-money paid.

By agreement, stated to be made by the parties to the ejectment above mentioned, this action was to be settled by stating an account between Shields and the Craigs of the purchase-money and payments, and the rents respectively received. The share belonging to the children of Shields, secured by the Orphans' Court recognisances, was to be allowed to him, and he was to give a judgment therefor payable after his death; a deed was then to be made under advice of counsel.

A calculation was made of the rents by the referees, and after that, in pursuance of the above agreement, an account was stated between the parties, which resulted in a balance of $1214, due to Alexander Craig from Shields, for which amount judgment was entered for the defendant in the action of assumpsit above mentioned in 1829.

Among other things, the defendant relied on a sheriff's sale of Craig's estate. In 1821 a judgment was recovered against him for $68 and $2 costs. Under the *alias fi. fa.* issued thereon in 1829, the sheriff levied "on all the right, title, and interest of the said George Shields as tenant by the curtesy of" the land in question. The docket showed that a *venditioni exponas* had issued, but it was lost and no return could be found. But the sheriff's deed recited the above levy in the words of the return, the *venditioni* and the sale, and conveyed the estate of George Shields "as tenant by the curtesy of ——, his wife, of, in," &c. The defendant's lessor had a conveyance from the purchaser.

The sheriff, on his examination, stated that Shields had given him the description of the premises, and he believed of the extent of his interest.

The plaintiff gave evidence that shortly before the commencement of this action, which was in 1846, he tendered the amount due under the above-mentioned agreement, together with a confession of judgment for the share due to his children under the Orphans' Court recognisances in the partition, and demanded a deed. He also tendered payment of the amount paid by him at the sheriff's sale, and the costs of the cause due to Craig.

The witness who proved this was objected to. He had been plaintiff's attorney, and had had a contract to have part of the land in case of recovery, but that was rescinded.

It was also shown that the value of the land was from $17 to $20 per acre, but no improvements had been made by the defendant, and that the annual value was more than the interest on the unpaid purchase-money. But the record contained no further evidence of Shields's endeavours to carry out the contract since 1829, than the defendant's assertion that Shields had been pestering him for some time.

The charge of the learned Judge (KNOX, P. J.), so far as it was excepted to, was (1st point, 2d error), That the sheriff's sale did not pass the title of Shields; (2d and 3d and 4th), Nor would Shields be concluded by a mere passive acquiescence in the misdescription

of his estate, knowing of the levy, but that if, when he gave the sheriff this description, he represented to him that his interest was that of a tenant by the curtesy or a life-estate, thereby inducing the sheriff to levy upon and sell it as such, the sale would pass a life-estate, and he would be precluded from recovering possession. But this fact should be found only from evidence that was clear, distinct, and satisfactory. 5th, The delay was not fatal, and the tender was of all requisite acts.

*Burrell*, for plaintiff in error.—The attorney was incompetent; he was interested, and he made the tender with his own money. The sheriff could reserve nothing, and he was bound to sell all the defendant's estate: 2 Penn. 340; 2 W. & S. 399. An inquisition was not essential, for as there could be no delivery under a *liberari*, there could be no profits to pay the debt: 1 Yeat. 427; 2 Ib. 150; Act 1705, § 2; an inquisition at this time must be presumed: 1 S. & R. 92. But here the defendant acquiesced, knowing the description, and he is bound by it: 1 Rawle, 155; 9 Watts, 482. Nor have the words "as tenant by the curtesy," any force; whether they are treated as qualifying the antecedents, or as a false or mistaken description, the entire estate passes: 4 Mass. 196; 7 Johns. 216; 1 Pick. 27; 4 T. R. 74. The Court should have left the question whether the description was furnished by Shields to the jury upon the weight of the evidence. Under that charge, such a fact could never be proved at this distance of time.

But the right was lost by lapse of time. He had but an equity at first, and eighteen years have been permitted to elapse without attempting to enforce it. Now that the land has risen in value, he would speculate on it: Sug. Vend. 279–81, and cases there cited; 9 John. 466; 3 John. Ca. 60; 1 S. & R. 375; 2 Penn. 63; 2 Ala. 425; 1 Story, 422; 1 Madd. Ch. 407; 8 Watts, 374; 9 Ib. 49; 1 W. & S. 533; 5 Watts, 451; 8 S. & R. 484.

*Foster*, contrà.—The levy controls all subsequent proceedings: 1 Rawle, 155; 4 Watts, 244. If the defendant has a less interest than is there described, it will pass, but never if a greater, any more than if half a tract were levied on would the whole pass: 7 Watts, 51; 9 Ib. 482. Extraordinary words introduced into a levy must have a meaning given them; and what other effect can be given to these but as descriptive of the thing or right sold? The jury having found defendant had no agency in producing this error,

he was entitled to the inquest. It would be strange to waive that because of the limited quantity of the estate levied on, and then hold the entire estate passed. Nor was he bound to interfere and prevent a mere nullity and thing forbidden by the law being done, 9 S. & R. 156, and so have been the recent decisions as to sales of life-estates, which are held merely void, being prohibited by statute: 1 Barr, 201; 2 Ib. 485. As to the laches, it is immaterial; more than half the price was paid, and there was a judgment for the residue. The rent overpaid the interest, and there has been no increase of value through improvements. In such case the time limiting an ejectment would be the only bar to our equity: 1 Stor. Eq. § 64, a; 4 W. & S. 24; 2 Ch. Ca. 18; 1 Mad. Ch. 218.

ROGERS, J.—There is nothing exceptional in the admission of E. Coyan, Esquire, as a witness. He was duly competent; for, although at one time he had an interest in the event of the suit, yet at the time he was sworn his interest was divested by a subsequent contract. An attorney may be a witness in a cause in which he is counsel, although it ought in all cases to be avoided, if possible. The practice of assuming the office of a witness without relinquishing that of counsel, cannot be too much discountenanced. The testimony was no further material than to prove a tender which was thought essential to the maintenance of the action, although it may be doubtful whether, under the circumstances, a tender was requisite. But, be this as it may, he was clearly competent. That it was his own money which was tendered can make no difference, for it was of no consequence to the Craigs to whom it belonged, whether to the attorney or his client. But it is said the Court erred in not charging the jury that the sheriff's sale passed the entire interest of Shields in the land; in charging that if the misdescription in the levy was made by the sheriff himself, or at the instance of plaintiff, the sale passed nothing, although Shields knew of the erroneous levy and acquiesced in it; and in charging that the fact that Shields gave the description of his interest to the sheriff could be found only upon clear, distinct, and satisfactory evidence. The propositions above stated are so blended that they may be profitably considered together.

It is an exceedingly clear proposition, that as the estate of Shields was a fee-simple, nothing less than a fee could be legally sold by a judicial sale without his consent. It would lead to the most disastrous results if the sheriff is permitted at his will and pleasure

to carve a less estate out of a fee-simple to sell in satisfaction of the debt, where the debtor is the owner of the fee. His duty is plain, which is, to sell the interest of the debtor in the estate, without troubling himself to ascertain what that interest may be, whether a term of years, an estate for life, or a fee. In considering the question now raised, it must be borne in mind that the jury have found that the sheriff of his own will and at the instance of the plaintiff or his counsel, made the misdescription, and sold the interest without inquisition. And the question is what interest, if any, passed to the sheriff's vendee. That a fee did not pass, would seem to be indisputable. It is easy to understand that where, as in Hitchcok v. Hotchkiss, 1 Ca. R. 476, and Althers v. Bears, 14 Mass. 405, a fee is levied on and sold, a life-estate will pass, but it is difficult to comprehend the converse of the proposition. A greater estate may include the less, but it does not follow that the less should include the greater. In Carpenter v. Cameron, 7 Watts, 51, it is ruled that a sheriff's sale of the undivided half of a tract of land will confer title upon the purchaser to no more than that quantity; although at the time of the levy, inquisition, and condemnation, the defendant's testator was seised of two-thirds of the land. And the same principle is held in McConnell v. Harvey, 9 Watts, 482. These authorities are decisive of the first point; and no distinction is perceived between a variance in the quantity of the land and of the estate. But it is said the levy and sale is of all the right, title, and interest of Shields, and if the levy stopped here, no difficulty could arise. But, unfortunately, the levy is on all the debtor's right, title, and interest, as tenant by the curtesy; which is but life-estate. This is a clear violation of duty. The sheriff is bound to sell the debtor's whole interest in the land, as is ruled in Reigle v. Seager, 2 P. R. 340; Fritz v. Heller, 2 W. & S. 399. We are not at liberty to strike out the words, "as tenant by the curtesy," as surplusage. It is not mere description, but an essential part of the levy and sale, indicating the quantity of the estate sold, and evidencing beyond all question that it is levied on as a life-estate, and sold as such. The vendee, at any rate, cannot have more than a life-estate, because that is all he purchased. Had the misdescription been in the levy, and had the deed conveyed all the right, title, and interest of the debtor, perhaps a different aspect would be given to the case; but by the acceptance of the deed which conveys but a life-estate, he estops himself from insisting on a fee. But, it is contended there is error in denying that if the

misdescription in the levy was made by the sheriff himself, at the instance of the plaintiff, the sale passed nothing, although Shields knew of the erroneous levy and acquiesced in it; that although a fee may not have passed, yet the sheriff's vendee acquired a life-estate in the premises. But we are of opinion the sale passed no title whatever. If the sheriff, of his own head, or at the instance of the plaintiff, or his counsel, misdescribes the land and sells the interest without an inquisition, why should it affect in any degree the debtor's title? They act in their own wrong, without his agency or co-operation. And when they undertook to sell an estate less than the debtor has in the land, it is a palpable violation of the law regulating sheriffs' sales; and whether they act wilfully or ignorantly, they have no person to blame but themselves. The mere passive acquiescence of Shields, even if he knew of the levy, would not vary the principle. His knowledge, without more, will not excuse a plain and palpable wrong. The creditor undertakes to judge for himself, without putting himself to the trouble of inquiring as to the nature of the estate the debtor has in the premises. If he had inquired (which, by the bye, was totally unnecessary, as the obvious course is to sell the debtor's interest, whatever it may be), it is possible he would have been correctly informed; if deceived, he would have reason to complain,—some colour for insisting that the loss should be thrown on the debtor. And so the Court in effect instructed the jury. "If Shields," say the Court, "at the time he gave the sheriff the description, represented to him that his interest was that of 'a tenant by the curtesy,' or a life interest, thereby inducing the sheriff to levy upon and sell it as such, it would pass at least a life-estate in his equitable interest. If, as is argued, the words 'tenant by the curtesy' were a mere qualification of the antecedent expression, 'all his right, title, and interest,' or a mere false or mistaken description superadded, it would fall within the principle decided in Worthington v. Hodson, 4 Mass. 196; Jenkins v. Clarke, 7 John. 216; Hill v. Jackson, 1 Pet. 27. "The words, 'as tenant,'" say the Court, "qualify and restrain the preceding words, 'all my right, title, and interest.' Taken together, it is impossible to mistake the meaning of the levy or the sheriff's deed." This I am willing to admit; but can the levy, with any fairness, be so understood? Is it not intended as a description of the quality of the estate, that is to say, "a tenancy by the curtesy," or life-estate levied and sold, is conveyed by the sheriff to his vendee. Considered then in this aspect, it is

clear the debtor had no such interest in the land, as the sheriff wrongfully undertook to sell and convey. He was, it is true, the owner of the fee, but he had no estate by the curtesy or life-estate *eo nomine*, whatever. The doctrine, *caveat emptor*, applies with full force to a purchaser at sheriff's sale. He cannot, as has already been seen, get more than he buys, and as the debtor has no such estate as that described, he takes nothing by his purchase. This doctrine, it may be said, will act hardly on purchasers at sheriff's sale, but not so; they may protect themselves by proper inquiries, or, what would be much better, by taking care that the property is sold in the accustomed manner. At any rate, it is better that he should suffer than that the owner should be deprived of his land by a sale made in violation of every principle of law. The plaintiff in error also complains that the Court instructed the jury that the fact that Shields induced the sheriff to describe him as tenant by the curtesy should be found only from evidence that is clear, distinct, and satisfactory. But in this we think the Court has done no wrong. The allegation was highly improbable, to say the least of it; and moreover, it is the imputation of a fraud on Shields, which ought not to be believed on slight grounds. It is further insisted, that the sale is void for want of an inquisition. The levy and sale of the equitable interest of a vendee, although only part of the purchase-money is paid, without inquisition or waiver, is absolutely void: Baird v. Lent, 8 W. 422. The only difference between that case and this is, that here the debtor was not in the actual possession of the land at the time of the levy and sale. In Dureau's Lessee v. Lawrence, cited in 2 Yeat. 150, it is ruled that the want of an inquisition does not avoid the sale where it is evident that the debt and costs could not be satisfied in seven years out of the annual rents and profits. And in Humphrey v. Humphrey, 1 Yeat. 427, it is decided that it is not necessary to hold an inquisition in a case where the life-estate has been seized in execution. Nor is it necessary in the case of leasehold: Macalester v. Weston, 4 W. & S. 255; Dalzel v. Lynn, 2 Miles, 156.

The reasons given are that such estates are uncertain in commencement and duration, and the creditor is not obliged to wait for his debt until the determination of the particular estate. In the case in hand the debtor had a present interest in the land, although in possession of another claiming in his own right. There is no uncertainty in its commencement nor duration in the sense of the cases, nor is it evident the debt, interest, and costs could not be

satisfied in seven years out of the annual profits. It is therefore obvious that the reasons on which the cases cited are ruled do not apply to this case. The only difficulty on this point is that the debtor whose land was sold was disseised; and the Act of 1705 would seem to contemplate land in the possession of the debtor, and not in the hands of another claiming an adverse title. But the Act of the 16th June, 1836, speaks of the owner of the estate, without reference to whether he is or is not in possession, as the person who alone may dispense with the inquisition. And, as the inquisition is intended for his advantage, it is not just that the rightful owner shall be deprived of the benefit of it merely because he may have been unfortunately and wrongfully deprived of the possession. The right of inquisition is sometimes of immense importance to the debtor, as a sale by the sheriff may be destructive of his right. It is impossible to say what judgment an inquest may form as to the value of the profits, with all the disadvantages which arise from an adverse possession of the profits. It is true that in such a case the sheriff cannot disturb the occupier; but although he cannot, as in other cases, deliver the actual possession, yet, on suing out a *liberari*, the creditor may stand in the place of the owner, and may, if he chooses, recover the actual possession from the disseisor. It would hardly be thought reasonable, that, when property is in the actual possession of a mortgagee, the title of the mortgagor can be sold without inquisition. And yet there would be the same objcetion in that case as here, that before the creditor could get the possession he may be compelled to resort to an action of ejectment. Indeed, at one time the only remedy of the creditor was by ejectment, now changed by statute, as the sheriff had not power to deliver the possession on a *liberari*.

But it is contended Shields's conduct amounts to an abandonment, and that Craig consequently had a right to rescind the contract. That equity, where the land has risen in value, and where the vendee does not perform an offer to do so within a reasonable time, will not enforce the contract, and thus enable him to speculate on his own delay, but will turn him over to his remedy at law. For the general principles bearing on this part of the case, many authorities are cited, none of which are disputed or denied. But neither a court of law or equity will impute an abandonment where the purchase-money is paid, as has been repeatedly ruled in the case of warrants for land. After the money is paid, or a large part of it, the doctrine of abandonment does not apply, and nothing

bars the right except a paramount title. So equity, where the title is an equitable title, would only require relief to be sought within the period in which an ejectment would lie at law : 1 Stor. Eq. 64; 4 W. & S. 24; 2 Ch. Ca. 18, 19; 1 Mad. Ch. 218. In this case we see no evidence of an abandonment; and although eighteen years have elapsed since the settlement, yet that the controversy has not been brought to an end, would not seem to be owing to any unreasonable delay on the part of the plaintiff. He has, it would appear, been continually pressing his claim, for this is not the first action of ejectment. Another was brought, in which he was compelled to suffer a nonsuit in consequence of a failure to tender the exact amount of the purchase-money. So far from his abandoning his right, his importunities were complained of by Craig, who said Shields had been pestering him for some time. That the land has risen in value is in consequence of no labour or expenditures of his, but it is a gradual appreciation in value, arising solely from lapse of time and the general prosperity of the county. In truth Craig has withheld the possession of the property for eighteen years, and it is not for him to complain of unreasonable delay. In the mean time he has been in the receipt of the rents and profits of the estate. A large portion of the purchase-money has been paid, a judgment rendered for the residue, and, in truth, nothing left undone on the part of Shields, except to secure him against the effects of certain recognisances, where the money is due to his own children. We see, therefore, nothing in the case which would prevent a court of equity from decreeing a specific performance of the contract — nothing which will bar an action of ejectment to recover possession of the property. On the whole case, we are of opinion the plaintiff is entitled to judgment.

Judgment affirmed.