# Eby, Appellant, *v.* Eby.

*Divorce—Fraud and coercion—Evidence.*

On a libel for divorce by a husband against his wife where the libellant alleges that he was forced into the marriage by fraud and coercion, the respondent may show that she and the libellant had been engaged to be married for some years, and that but a few months before the consummation of the marriage he had without any coercion, accompanied her to the office of the register of wills for the purpose of securing a license to marry.

Argued Dec. 11, 1917. Appeal, No. 316, Oct. T., 1917, by plaintiff, from judgment of C. P. Lancaster Co., Sept. T., 1916, No. 23, on verdict for defendant in case of Isaac R. Eby v. N. Stella Eby. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Libel for divorce. Before LANDIS, J.

At the trial the jury returned a verdict for respondent. On a rule for a new trial LANDIS, P. J., filed the following opinion:

The reasons for a new trial filed in this case need not be considered seriatim. A careful reading of them shows that, notwithstanding their multiplicity, there are but few points contained in them which require our examination. However, for a proper understanding of the propositions raised, it may be useful to briefly state the chief facts.

This was an action for divorce brought by Isaac R. Eby against N. Stella Eby, his wife. These parties were married at Elkton, Maryland, on August 16, 1916, by the Rev. George P. Jones, a minister of the Methodist Episcopal Church. The license was obtained without protest on the part of the plaintiff, and it is admitted by him that, when the marriage ceremony took place, he said nothing to the officiating clergyman about not want-

ing to marry.  There was no personal coercion tending
to bring about the marriage, either when the ceremony
was performed, or on the journey from Lancaster to
Elkton.  But the allegation of the libel is, that the mar-
riage was brought about by fraud and coercion, and
whether or not it was, was the question submitted to and
passed upon by the jury.

That this question was solely one of fact was not con-
troverted by any one.  It is, however, complained that
evidence was introduced and admitted which was ir-
relevant to the issue and prejudicial to the rights of the
plaintiff.  To this point, most of the reasons assigned
are directed.

The plaintiff proved that one, Grace Sheaffer, met the
plaintiff on a public street of Lancaster City; that she
was in an automobile, and was in company with one,
Maurice Ressler; that she induced the plaintiff to enter
the automobile under the pretense of taking him for a
ride; that she then took him to the country, to a hotel
located at Monterey, in this county, and that he was
there given something to drink which made him feel
queer.  The intimation is, that what he there drank was
drugged.  The defendant and some other parties were
brought to the hotel, and all of them went in the auto-
mobile to Elkton, Maryland, where the marriage service
took place.  The whole question at issue was, as has
been stated, whether there was fraud or coercion in
bringing about the marriage, and all the evidence offered
on either side tending to elucidate that question was sub-
mitted to the jury.

Until some few months prior to the happening of these
occurrences, the plaintiff had lived on a farm, in Upper
Leacock Township, owned by himself and his brother,
Abram R. Eby.  The defendant had lived in their house-
hold for about twenty-five years.  It was proven by this
brother and also by the defendant, that the plaintiff and
the defendant had been engaged to be married for some
years.  It was also shown that, three months before the

marriage, the plaintiff and the defendant, uninfluenced so far as appears in the record by any outside persons, came to the register's office of this county and endeavored to secure a marriage license. The plaintiff had been divorced from a former wife, and, as no certificate of divorce was then presented, the license was refused by the clerk. They then, with the proper certificate of divorce, went a few days afterwards to the City of Reading, and made the same application in Berks County; but, in the meantime, Daniel Kachel, a clerk in the register's office of this county, who had known both the parties for some time, telephoned a request to the clerk of Berks County not to grant the license, and this request was complied with. The plaintiff now insists that all of the evidence relating to their prior engagement and to these attempts to consummate it was irrelevant to the issue and should not have been admitted, and that no evidence should have been permitted except that which related to the time of the abduction and coercion.

In Montgomery Web Co. v. Dienelt, 133 Pa. 585, the court, following the well-established principles of law, said: "Fraud, as has often been said, can rarely be proved by direct and positive testimony, and great liberality is always allowed in the introduction of evidence having a tendency to show it." When the question of fraud is involved, great latitude is allowed in the admission of evidence, and every circumstance in the condition and relation of the parties and every declaration and act of the person charged with the fraud is competent evidence if, in the opinion of the court, it bears such a relation to the transaction under investigation as in its nature is calculated to persuade the jury that the allegation of fraud is or is not well-founded: Pepper & Lewis's Digest of Decisions, Vol. 6, p. 9, 341; Max Meadows Land & Improvement Co. v. Mendinhall, 4 Pa. Superior Ct. 398. On the other hand, however, the party charged with fraud is likewise entitled to reasonable liberality in offering evidence to rebut or disprove the charges. In

Heath v. Slocum, 115 Pa. 549, Mr. Justice PAXSON said:·
"The defendants below were charged with fraud, and it
is familiar law that in such cases the party alleging the
fraud is entitled to a wide range of evidence to sustain
such charge. This grows out of the difficulty of prov-
ing fraud. It is usually secret and is pursued by in-
tricate and crooked paths. At the same time, a reasona-
ble liberality must be allowed to a defendant in his at-  .
tempt to rebut or disprove such a charge. It is a serious
accusation to make, as it affects not only property, but
reputation as well." Now, the charge against the de-
fendant being fraud and coercion in bringing about this
marriage, the plaintiff' was entitled to produce all evi-
dence which would aid in establishing that charge. He
was permitted so to do, and his testimony took a wide
range. On the other hand, the defendant had the same
right to present every circumstance which would rebut
the inferences thus raised and which would establish the
fairness of the agreement which the parties had entered
into. Therefore, the attempt to procure a license to
marry but a few months before the actual consummation
of the marriage and the fact that the parties had had
intimate relations for a long time prior to the marriage
was surely some evidence of its good faith. If the men-
tal faculties of the plaintiff were normal (and there was
no evidence in the case to the contrary, though he was
shown to be rather weak and up in years), then what he
did knowingly was binding upon him. This woman had
a right to persuade him into a marriage, if she used no
unfair or illegal means to produce that result. If she
accomplished her object by fair means, he was no doubt
in the same condition as many others who, having en-
tered into these bonds, afterwards had vain regrets.
But, so that there might be no mistake in the minds of
the jury as to the effect of this evidence, the court in its
charge carefully explained the relation of this testimony
to the cause at issue and the manner in which it should
be treated by them. The words used in the charge were:

323, (1918).] Opinion of Court below—Assignment of Errors.

"There was evidence presented in the case that, some few months before, Isaac and Stella had come to Lancaster to obtain a marriage license, which was refused, and that they afterwards went to Reading. There is no contradiction that this was done. Isaac says that, at that time, he was also under coercion; but, be that as it may, we have permitted the introduction of these prior relations of the parties, not to establish that there was no conspiracy, that there could be no conspiracy such as is here alleged entered into. It was admitted for the purpose of showing the feelings of them toward each other which formerly existed, if the facts as alleged were true, and whether or not, under the circumstances, there was fraud and coercion at the time of the marriage, as is alleged by the plaintiff. It is for the jury to say whether, in view of these relations, the present contract was entered into voluntarily. But the former intention to marry may have been abandoned, in which case such evidence is of no account; and, if such intention was abandoned, it is no justification for a conspiracy, by fraud or coercion, to bring about the subsequent marriage." I, therefore, can see no error in the admission of the evidence. If it was true, it might, in the minds of the jury, rebut the charge that the plaintiff was drugged and that he by fraud and coercion was induced to enter into the contract. In my judgment, it was clearly a part of the defendant's case which she had a right to have presented to the jury.

Rule discharged.

*Errors assigned* were various rulings on evidence.

*B. F. Davis,* with him *Harvey B. Lutz,* for appellant.

*John E. Malone,* with him *Chas. W. Eaby,* for appellee.

PER CURIAM, March 2, 1918:

The opinion of the court below in discharging the rule for a new trial furnishes a sufficient answer to overrule the assignments of error, and for the reasons therein given the judgment is affirmed.