Smith, to use, *v.* Smith, Appellant.

Argued October 2, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Lewis C. Walkinshaw,* with him *David N. Denman,* for appellant.

*E. Walker Smith,* with him *Harry W. Fee,* for appellees.

OPINION BY MR. JUSTICE SCHAFFER, November 26, 1928:

The trial judge closes his opinion on defendants' motion for judgment non obstante veredicto and for a new trial with the statement, "In justice to myself I want the appellate court to know that counsel on both sides either did not know how to present their respective contentions or this court did not know how to grasp them. At all events the court did the best it could to reach an equitable verdict." Our reading of the confused and cloudy record causes us to appreciate the comment of the judge who listened as it was made. One feature of it is noteworthy; counsel for appellant who argued the case before us, was alternately advocate and witness at the trial. It would have been better both as a matter of professional good taste and for orderly presentation of his clients' defense if, when he found it necessary to assume the character of witness, he had ceased to act in that of counsel. We have received very little help from the oral arguments of counsel or their briefs; matters are stressed therein which seem to us entirely outside the real issue involved.

We have reached the conclusion, however, from our analysis of the record, that the verdict in plaintiffs' favor cannot presently be justified when the facts are simply stated.

B. E. Smith, the appellant, and thirteen others, all of whom were stockholders in the Sanitary Tool and Specialty Company, executed a collateral judgment note to their own order in the sum of $5,000, dated January 8, 1913. The primary obligation was a note made by the Sanitary Tool and Specialty Company to the order of

the Clymer National Bank for $3,000, representing that amount of money loaned by the bank to the company. The $5,000 collateral note was recited therein. Among the signers of the collateral note were Briggs, Fulton and Steffey, the use-plaintiffs in this proceeding, who claim that they ultimately discharged the indebtedness due the bank which fell upon them because of the fraud of appellant. Judgment was entered on the $5,000 collateral note on April 28, 1913, a credit of $2,500 was endorsed on the judgment on May 29, 1916, and on May 4, 1918, it was assigned to the use-plaintiffs. The judgment was duly revived by sci. fa. and on December 11, 1926, appellant, B. E. Smith, presented an application to open it, which was granted and this review is of the trial of the issue as to whether anything was due by him thereon. The verdict was against him for the full balance due, with interest.

As already stated, the Sanitary Tool and Specialty Company had borrowed from the Clymer National Bank $3,000, for which it gave its note with the $5,000 judgment note in question as collateral. The primary obligation was renewed from time to time, nothing being paid on it. Ultimately the company became involved financially and confessed two judgments to appellant, who was its president. These judgments were without consideration and fraudulent as to its creditors. On one of them for $500 execution was issued and the company's personal property was sold at sheriff's sale to appellant for less than the amount of the judgment, he paying nothing for it but giving a lien creditor's receipt. The company's real estate was also struck down to him for $10. The personal property which he purchased he sold to another concern, making no account of the money received for it to the Sanitary Company. On the witness stand he evasively answered as to what he received and from the record it could not be determined. He and his attorney, Mr. Walkinshaw, then proceeded to organize a new corporation called the Latrobe Products Com-

pany, to which appellant conveyed the plant of the Sanitary Company which he had purchased at the sheriff's sale. They arranged with the Clymer National Bank to substitute the note of the Products Company for $3,000 for the note of similar amount of the Sanitary Company, which the bank held, with another note for $5,000 as collateral security, signed by seven of the original fourteen makers. The bank thereupon turned over the original note of $3,000 of the Sanitary Company to the officers of the new company, as paid, but did not satisfy the judgment entered on the original $5,000 note. Shortly thereafter the buildings which had been conveyed to the Products Company were destroyed by fire and the insurance thereon was collected by the Products Company. Following this an arrangement was entered into by which the Products Company conveyed all its property to the Clymer National Bank for an expressed consideration of $2,000; nothing, however, was paid and later on the bank sold the property for $500. Apparently the bank subsequently called upon the three use-plaintiffs to pay the remaining indebtedness due to it, which they did, and it assigned to them the judgment in question entered on the original $5,000 collateral note.

Appellant's petition to open the judgment and his defense thereto is based upon the proposition that when the $3,000 note of the Latrobe Products Company, with the new $5,000 collateral note, was accepted by the bank in lieu of the note of similar amount made by the Sanitary Company, this amounted to a novation and was equivalent to payment, resulting in the discharge of the original $5,000 collateral note as well, and that he cannot be held liable on the judgment in question entered thereon. The answer of the use-plaintiffs is that the whole transaction of the confessions of judgments to appellant by the Sanitary Company, the sheriff's sales thereon, the purchase of the personal property by appellant, his subsequent sale thereof and receipt of the price

therefor without accounting for it, his purchase of the real estate at the sheriff's sale for a nominal consideration, the organization of the new company and the conveyance of the property to it was a fraud upon them as stockholders of the Sanitary Company, which entitles them, having discharged the amount of the indebtedness due to the bank and received an assignment of the judgment, to compel appellant to pay the balance due thereon, particularly so in view of the fact that appellant has received and appropriated substantially all the property of the Sanitary Company to his own use in fraud of their rights as stockholders thereof. The court below submitted the question of fraud to the jury as the controlling issue in the case and they found in appellees' favor.

The contention of appellant is that an arrangement was entered into by him with the Clymer National Bank by which, in consideration of the conveyance of the property of the Latrobe Products Company to it, it agreed to accept the Products Company as its debtor in lieu of the Sanitary Company. Certain things which occurred lend some color to the conclusion that this arrangement was made. The bank accepted the new note of the Products Company for $3,000 and delivered up as paid the old obligation of the Sanitary Company for that amount, at the same time taking a new collateral judgment note for $5,000 signed by only seven of the persons who had signed the original $5,000 collateral note. Judgment was entered on this note and subsequently satisfied. When the property of the Latrobe Company was conveyed to the bank, the note of the Latrobe Company was returned to it as paid and cancelled.

Appellant did not live in Indiana County where the judgment was entered and the business of the Sanitary Company and the Latrobe Company was conducted in Westmoreland County where the property was located. He had no knowledge of the entry of judgment in In-

diana County in 1913 or of the sci. fa. thereon until the entry of an exemplification thereof in Westmoreland County in December, 1926, immediately following which he filed his petition to open.

The transactions connected with the substitution of the note of the Latrobe Company for that of the Sanitary Company took place in 1914, twelve years before the entry of the exemplified judgment in Westmoreland County. Appellant by reason of this lapse of time was at a disadvantage in showing all details of the arrangement entered into when the change of debtors was made. If the bank agreed to accept the Latrobe Company in place of the Sanitary Company and if, as appellant contends, the judgment on the collateral note was only through an oversight not satisfied when the arrangement was consummated, then in justice he ought not to be called upon to pay it.

In his endeavor to show just what occurred when the Latrobe Company took the place in the picture which the Sanitary Company had occupied, it would seem that the trial judge held too tight a rein on appellant. He was not permitted to offer a letter from the bank to him dated September 14, 1914, in which the bank stated that, upon receipt of the deed for the property of the Latrobe Company, it would release him from further obligation "in the way of notes at this bank," also a letter from the Latrobe Company to the bank dated October 5, 1914, reciting that in accordance with the arrangement between them and "in view of the old obligations of the Sanitary Tool and Specialty Company we have prepared the enclosed brief release for you to execute that we may place it in the files of the company." It was offered to follow this with proof that the release was prepared, mailed to the bank and received back from it by the Products Company duly executed, but that it could not be produced because it had been mislaid or destroyed. Had these matters been before the jury, their conclusion might have been different. There are other alleged errors cov-

ering the refusal to admit testimony offered by appellant, but we think they need not be gone into in detail at this time. When the case comes to be more carefully developed on another trial they may take on a different aspect.

Appellant was charged with having perpetrated a fraud on the use-plaintiffs. That being the allegation, a wide door was opened to show the entire field of dealings between the parties from inception to close. It was not open wide to the appellees alone, but should have been held as far ajar for appellant to rebut the charge of bad faith if he could: Heath v. Slocum, 115 Pa. 549; Eby v. Eby, 69 Pa. Superior Ct. 323; Henry, Pennsylvania Trial Evidence (2d ed.), page 30. We think the court unduly narrowed the aperture for him and that he should have another opportunity to exhibit all the proofs that he has of what occurred.

The second, fourth, fifth and sixth assignments of error are sustained and a new trial is awarded.