552 A.2d 682

**COMMONWEALTH of Pennsylvania**

v.

**Gregory WILLIS, Appellant.**

Superior Court of Pennsylvania.

Argued June 3, 1988.

Filed Dec. 30, 1988.

Petition for Allowance of Appeal Denied May 4, 1989.

William J. Faust, Philadelphia, for appellant.

Deborah Fleisher, Assistant District Attorney, Philadelphia, for Com., appellee.

Before CIRILLO, President Judge, and CAVANAUGH, ROWLEY, WIEAND, McEWEN, BECK, KELLY, POPOVICH and MELINSON, JJ.

KELLY, Judge:

The Commonwealth petitioned for and was granted reargument following reversal of appellant's child sexual abuse convictions and remand for a new trial by a divided panel of this Court. Following reargument *en banc*, we affirm judgment of sentence imposed by the trial court.

## FACTS AND PROCEDURAL HISTORY

Appellant, Gregory Willis, was an elementary school gym teacher at a public school in Philadelphia. On November 21, 1984, appellant asked an eight year old female student to come into his office. He then proceeded to fondle her breasts and her bottom. He also requested her to perform *fellatio* and attempted to force her to do so. On December 3, 1984, appellant called a five year old female student into his office and, after promising the girl candy, placed his penis in her mouth.

On December 6, 1984, appellant was arrested and charged with involuntary deviate sexual intercourse, corruption of a minor, indecent assault and simple assault relating to his sexual assault of the five year old child victim. On December 12, 1984, appellant was bound over for trial on those charges following a preliminary hearing.

On December 14, 1984, appellant was charged with attempt and solicitation to commit involuntary deviate sexual intercourse, corruption of a minor, and indecent assault relating to his sexual assault upon the eight year old victim. The second set of charges were filed after the eight year old's grandmother had seen a television report concerning the first set of charges, and had questioned her granddaughter regarding a statement her granddaughter had made a couple of weeks earlier, *i.e.* that her gym teacher liked her.

On December 19, 1984, the eight year old victim was interviewed privately by Assistant District Attorney John Delaney. She told him that appellant fondled her rear end, forced her head into his crotch, and told her in vulgar terms to perform *fellatio.* At the preliminary hearing that same day, she indicated that appellant had fondled her rear end but responded negatively to questions as to whether anything else had happened. The trial court concluded that the Commonwealth had not established a *prima facie* case on any of the charges; and so, the charges were dismissed and appellant was discharged as to those offenses.

After the hearing, Assistant District Attorney Delaney asked the eight year old victim why she had not told the judge what she had told him earlier that day about the other things appellant had done. The child victim responded that she did not tell the judge about the other things because she was afraid appellant, who had been in the room during the hearing standing less than five feet from her, would hurt her.

On January 22, 1985, the second set of charges were refiled against appellant. At the second preliminary hearing, the eight year old victim testified consistent with her prior statements to Assistant District Attorney Delaney regarding the acts she had not reported in the first hearing. Appellant was bound over for trial on all of the charges. Timely motions to extend the time in which to bring appellant to trial, as to both sets of charges, were granted due to judicial delay caused by crowded dockets.

On November 1, 1985, appellant was brought to trial on the second set of charges relating to his sexual abuse of the eight year old victim. He waived his right to a trial by jury and proceeded to a bench trial. Assistant District Attorney Hyman replaced Assistant District Attorney Delaney as prosecutor and presented the evidence and argument to the court. Assistant District Attorney Delaney testified briefly for the prosecution. Appellant was found guilty on all counts.

On March 11, 1986, following a comprehensive colloquy, appellant entered a guilty plea to the charge of involuntary deviate sexual intercourse and corruption of minors relating to his sexual assault upon the five year old victim. The indecent assault and simple assault charges were *nol prossed.*

On that date, the post-verdict motions relating to appellant's conviction of the offenses arising from his sexual assault on the eight year old victim were argued and denied. The trial court then proceeded to sentence appellant on both sets of charges. *See* Pa.R.Crim.P. 1402(b).

Counsel for appellant indicated that both he and appellant had reviewed the pre-sentence report and that they had no corrections to offer. Counsel then offered extended argument as to why the court should sentence appellant *outside* and *below* the recommended mitigated minimum range of the applicable sentencing guidelines. Counsel noted the availability of treatment programs and emphasized appellant's admission of his need for treatment. Numerous character witnesses were presented on appellant's behalf. Appellant then made a lengthy statement on his own behalf, apologizing for his conduct, assuring the court it would not be repeated, listing his commitments to his church and his community, and asking for mercy.

The Commonwealth presented evidence from the eight year old victim's grandmother and the mother and father of the five year old victim as to the impact of the crimes on the two victims. The Commonwealth argued that a lengthy sentence was appropriate in light of the age of the victims and appellant's violation of his position of trust as a teacher. The prosecutor also noted appellant's job transfer after similar sexual abuse allegations were raised previously. The trial court noted that evidence had been produced earlier that the charges were not prosecuted because the children were considered too traumatized to testify against appellant.

Following a lengthy statement of the reasons for the sentence imposed, outlining the various factors considered, the trial court imposed an aggregate term of eleven (11) to twenty-two (22) years imprisonment. After review of a timely motion to reconsider sentence and reception of additional evidence and argument, however, the trial court vacated the prior sentence and imposed a new sentence of five (5) to ten (10) years imprisonment on the involuntary deviate sexual intercourse conviction relating to the five year old victim, and a concurrent sentence of four (4) to eight (8) years imprisonment on the attempted involuntary deviate sexual intercourse conviction relating to the eight

year old victim. No subsequent motion to reconsider sentence was filed. Timely notice of appeal was filed.

Appellant presented the following contentions on appeal:

1. The trial court erred when appellant's conviction was against the weight of the evidence because complainant's testimony was so inconsistent and contradictory as to be insufficient to support a finding of guilt.

2. Appellant's conviction violates appellant's constitutional rights to due process of law, because the bills of information were impermissibly vague as to the date of the offense and the evidence failed to establish the date of the alleged criminal acts with the required reasonable specificity.

3. The trial court erred by allowing John Delaney, Assistant District Attorney to testify, because his testimony was hearsay.

4. The court erred by sentencing appellant to unduly harsh sentence and giving inadequate reasons for imposition of sentence in aggravated range.

(Appellant's Brief at 9, 10, 13 and 14).[1]

This appeal was originally heard by a three judge panel of this Court. The panel majority reversed appellant's convictions relating to the sexual assault upon the eight year old victim and vacated the judgment of sentence imposed, based upon a finding that Assistant District Attorney Delaney was incompetent to testify because of his prior participation in the prosecution of the charges against appellant at the preliminary hearing stage. One member of the panel filed a dissenting opinion in which he opined that: the verdict was not against the weight of the evidence; appellant's due process rights were not violated; appellant's hearsay objec-

---

1. Appellant's brief did not contain page two (apparently due to a clerical error) which was to contain his Statement of Questions presented. Statements of the issues were contained in the Table of Contents and at the head of the Argument sections in the body of the brief. We do not find the omission of the Pa.R.A.P. 2116 Statement to have been fatal to those contentions on appeal. *See Commonwealth v. Carr,* 375 Pa.Super. 168, 173–174 & n., 543 A.2d 1232, 1234 & n. (1988).

tion to Assistant District Attorney Delaney's competency testimony was without merit; appellant's challenge to the discretionary aspects of sentence was not properly preserved; the majority erred in raising the issue of Assistant District Attorney Delaney's competency to testify *sua sponte;* and Assistant District Attorney Delaney was not incompetent to testify at trial based upon his prior participation in the case as the prosecutor assigned at the preliminary hearing stage.

The Commonwealth filed a timely motion for reargument *en banc* in which it contended: 1) the dissenting member of the panel was correct in opining that the majority had improperly raised, *sua sponte,* the issue of Assistant District Attorney Delaney's competency to testify, and had incorrectly resolved the issue; and 2) in reversing the convictions relating to the assault upon the eight year old child victim, the panel majority incorrectly vacated sentence upon the conviction which arose from appellant's guilty plea relating to the assault upon the five year old victim as it had not been challenged on appeal.[2] This Court granted the Commonwealth's motion for reargument *en banc.*

We have had the benefit of additional briefs and oral arguments. Upon careful review of the record, the various briefs, the opinion of the trial court, the opinions of our learned colleagues, and the relevant caselaw and authorities, we conclude that appellant's contentions on appeal are without merit. Accordingly, we affirm judgment of sentence imposed by the trial court. Our reasoning follows.

## I. WEIGHT OF THE EVIDENCE

Appellant contends that the testimony of the eight year old child victim was so inconsistent as to render the verdict of the trial judge, who presided in the bench trial, contrary

2. Though our disposition of the appeal renders this contention moot, we note that when sentence is imposed at the same time for more than one conviction and one or more convictions are subsequently reversed, this Court may properly vacate the entire sentence and remand for resentencing on the remaining convictions. *See Commonwealth v. Williams,* 368 Pa.Super. 315, 324, 534 A.2d 101, 105 (1987).

to the weight of the evidence. Appellant cites in support of this contention *Commonwealth v. Bennett,* 224 Pa.Super. 238, 303 A.2d 220 (1973). We cannot agree.

The finder of fact has the prerogative to determine credibility, to resolve conflicts in the evidence, to make reasonable inferences from the evidence, to believe all, part, or none of the evidence presented, and to determine the weight to be assigned to the evidence. *See generally Commonwealth v. Pearsall,* 368 Pa.Super. 327, 329–30, 534 A.2d 106, 108 (1987) (citing cases). Whether a new trial should be granted because the verdict is against the weight of the evidence is an issue addressed to the sound discretion of the trial court. An appellate court may only reverse a trial court's denial of a motion for a new trial on such grounds when the verdict is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Pearsall, supra; Commonwealth v. Stambaugh,* 355 Pa.Super. 73, 512 A.2d 1216 (1986).

In *Commonwealth v. Bennett, supra,* this Court reversed a defendant's conviction and directed his discharge where the Commonwealth's sole witness to the offense of receiving stolen property was the individual who, according to his own admission, had stolen the property. This Court found that a verdict based upon the thief's testimony could not be sustained in light of the series of "wholly different, inconsistent, and conflicting versions" of the relevant facts which the thief had given. The panel majority reasoned that under those *extreme* circumstances selection of one of the thief's versions of the facts over the others would be a matter of pure speculation by the jury. 224 Pa.Superior Ct. at 239–240, 303 A.2d at 220–21.

■ Here, on the other hand, the appellant seeks a new trial based primarily upon the fact that the child victim's testimony at trial was inconsistent with her testimony at the first preliminary hearing. At trial, the child victim acknowledged the prior inconsistent statements made at the first preliminary hearing and explained that she had given the inconsistent testimony because she was afraid of appel-

lant, who had been in the room standing about five feet from her when she testified at the preliminary hearing. This explanation was supported by corroborative evidence presented by Assistant District Attorney Delaney regarding the circumstances of her prior inconsistent statements and regarding prior consistent statements made by the child victim immediately before and immediately after the first preliminary hearing. The trial court as finder of fact was free to accept the proffered explanation of the inconsistency. *Cf. Commonwealth v. McMillan*, 376 Pa.Super. 25, 39, 545 A.2d 301, 308 (1988) (the jury was free to accept the victim's explanation for his inconsistent statement to the police).

■ Moreover, upon careful review of the child victim's testimony, we find no basis to award a new trial. The inconsistencies to which appellant has directed our attention, individually and collectively, fail to rise to a level which would render the verdict a matter of "pure speculation" or which would "shock our sense of justice." Rather, the record reveals that in addition to the prior inconsistent statements which were explained, able counsel led the youthful child victim into only minor inconsistencies regarding peripheral details relating to the incident. The child victim remained resolute regarding the core details of the incident despite close cross-examination and the rather sophisticated language used by counsel in questioning the witness.[3] This minimally effective impeachment did not undermine the verdict so as to require this Court to reverse the trial court's denial of the motion for a new trial.

3. Child witnesses should generally be questioned on direct and cross-examination with direct rather than convoluted or compound questions, and questions should be phrased in simple language. *Cf.* Jones, *Judicial Questioning of Children*, 18 Fam.L.Q. 43, 58–68 (1984) (discussing the need to accommodate the developmental differences between adults and children in questioning child witnesses). Trial courts may, of course, intervene to require counsel to rephrase confusing, misleading, ambiguous, unintelligible, or compound questions. *See* Meyers, *Child Witness Law & Practice*, § 4.31 at 20 (1987 & 1988 Supp.).

Rather, the trial court's conclusion that the verdict was not contrary to the evidence is fully sustained by the record.

## II. DUE PROCESS/DATE OF THE OFFENSE

Appellant next contends that he was denied constitutional due process based upon the failure of the Commonwealth to state the date of the offense with reasonable specificity in the information filed against him, and in failing to establish the date of the offense at trial. We find no merit in this contention.

The relevant caselaw has been fully set forth and analyzed in two recent opinions of this Court. *See Commonwealth v. Appenzeller* (No. 2601 Philadelphia 1987, filed 11/2/88); *Commonwealth v. Fanelli*, 377 Pa.Super. 555, 558–565, 547 A.2d 1201, 1203–1207 (1988) (*en banc*). Applying the balancing test explained in those opinions, we find no due process violation in the instant case.

The original complaint, filed December 13, 1984, informed appellant that the offenses were alleged to have been committed "on or about November 21, 1984." The second complaint filed on January 22, 1985, repeated the allegation that the offenses were committed "on or about November 21, 1984." Thus, the complaint filed on December 14, 1984, alleged that the sexual abuse had occurred less than one month earlier. Appellant's initial notice as to the date of the offense was reasonably specific.

Subsequently, however, appellant received notice that the Commonwealth's initial precision as to the date of the offenses might be subject to some variance in the proof to be offered at trial. On direct examination, at the second preliminary hearing on April 8, 1985, the child victim testified that the incident occurred around Thanksgiving. (N.T. 4/8/85 at 12–13). On cross-examination she indicated that it occurred on a day *after* Thanksgiving, *after* lunch, and *during* gym class. (N.T. 4/8/85 at 22, 25–26).

At trial, the child victim indicated on direct examination that the incident occurred *after* gym and *during* the lunch period on a school day sometime around Thanksgiving. On

cross-examination, her confusion and limited sense of time became apparent, as the following excerpts indicate:

Q. ... again, the second time that you testified when Mr. Delaney asked you the question—page 22, Your Honor—I am asking you a question, 'Was this before lunch or after lunch or don't remember? ANSWER: After lunch.' Do you remember being asked that question and giving that answer?

A. *I don't know the difference between before and after.*

Q. Well, before would be a time period occurring—

MR. GOLDMAN: See, this is very difficult, Your Honor. May we approach you at side-bar.

(OFF THE RECORD DISCUSSION IS HELD AT SIDE-BAR)

Q. When you go to gym class or last November when you were going to gym class, did you eat lunch before you got to gym or after gym class was over?

A. After gym class was over.

Q. Then I am going to ask you my question again. The last time you testified I asked you, 'Was this before lunch or after lunch?' And you said, 'After lunch.' Do you remember giving that answer?

MR. HYMAN: Do you remember saying that when you were in court last time?

THE WITNESS: Yes.

Q. Which answer is true, this one that you gave here, saying that this happened after lunch?

A. *After gym and then lunch.*

Q. When did this occur, after lunch or before lunch?

MR. HYMAN: Your Honor, I'd object—

THE COURT: Overruled, overruled.

When did this occur, [name deleted]? Was it before lunch, after lunch or during lunch.

THE WITNESS: *During lunch.*

\* \* \* \* \* \*

570

Q. All right. You remember last year the date Thanksgiving was on, right?

A. Yes.

Q. Was this the Friday after Thanksgiving?

MR. HYMAN: Objection; asked and answered about three times.

THE COURT: I'll overrule the objection.

Was this the day after Thanksgiving? Did this happen the day after Thanksgiving? Do you remember?

THE WITNESS: *No.*

(N.T. 11/1/85 at 50–51, 75–76). (Emphasis added).

The uncertainty regarding the date of the offense, caused by the child victim's confusion and limited sense of time, was significantly reduced, however, by other evidence presented. The child victim clearly and consistently testified at trial that on the day of the incident lunch followed gym on her schedule. (*See* N.T. 11/1/85 at 25–26, 40–41, 48, 50–52, 54–55). The school principal testified that school was not in session on the Friday after Thanksgiving, and that the child victim had gym before lunch only on Wednesdays from 11:00 a.m. to 11:45 a.m., with lunch following from 11:45 a.m. to 12:30 p.m. (N.T. 11/1/85 at 84, 87).

The child victim also testified that on the date of the incident she told her grandmother that her gym teacher liked her. (N.T. 11/1/85 at 53). The victim's grandmother remembered the victim telling her that her gym teacher liked her. Though the victim's grandmother thought that the victim had told her that the week *before* Thanksgiving (*i.e.* the week of November 21, 1984), she acknowledged that she was not certain of the date. (N.T. 11/1/85 at 94–5). Officer Gwen Thomas testified that she interviewed the victim on December 11, 1984 and that the child victim indicated then that the incident had occurred in the gym office *before* she went home for Thanksgiving. (N.T. 11/1/85 at 98). The victim's classroom teacher during that time period testified that she remembered the child victim telling her sometime around Thanksgiving that her gym teacher liked her. (N.T. 11/1/85 at 88).

■ While it would be reasonable to infer from the above evidence that the incident *probably* occurred on Wednesday, November 21, 1984 between 11:45 a.m. and 12:30 p.m., it is *possible* that the incident occurred on one of the Wednesdays immediately prior or subsequent to November 21, 1984. We do not find this uncertainty or the possible variance from the date alleged in the complaints, to be fatal to the convictions under the due process standards set forth in *Fanelli* and *Appenzeller.* The time periods during which the incident could have occurred were determined with reasonable specificity under the circumstances.

### III. HEARSAY: PRIOR CONSISTENT STATEMENTS

Appellant next contends that the testimony of Assistant District Attorney Delaney was inadmissible hearsay. Appellant argues that because the child victim admitted that she had made the prior inconsistent statements, Assistant District Attorney Delaney's testimony regarding prior consistent statements, made immediately before and immediately after the hearing at which the prior inconsistent statements were made, was not admissible. Appellant cites *Commonwealth v. White,* 340 Pa. 139, 16 A.2d 407 (1940) in support of this contention. We find the issue to have been waived. Alternatively, we find the contention to be without merit.

### A.

■ It is axiomatic that only issues raised by specific objection in the trial court may be addressed on appeal. *See Commonwealth v. McMillan, supra; see also Commonwealth v. Butts,* 495 Pa. 528, 434 A.2d 1216 (1981). The record in this case reveals three objections during Assistant District Attorney Delaney's testimony. Two involved the mere utterance of the word "objection" without any grounds stated for the objection. The remaining objection was stated as follows:

Q. Did she testify to the court consistently with what she had told you earlier that day?

572

MR. GOLDMAN: Objection. Are you trying to put in inconsistent statements or consistent? This is really getting beyond what I feel the prosecution is allowed to do, Your Honor.

THE COURT: No. He can ask him if what she said was substantially consistent with what she said outside the courtroom. I see no problem with that. I will permit that.

(N.T. 11/1/85 at 104). Counsel in no way indicated that his objection was based upon the ground that the victim's admission that she had made the prior inconsistent statements at the first preliminary hearing rendered the evidence of the prior consistent statements inadmissible. Because counsel failed to assert that specific ground for the objection at trial, the issue is waived. *Commonwealth v. McMillan, supra.* We note that had an objection been clearly stated on that ground, the Commonwealth and the trial court would not have been denied (as they were here) the opportunity to either respond to the objection or to alter the course of the questioning accordingly.

## B.

Alternatively, we find no merit in the contention that the evidence was inadmissible under the circumstances of this case.

■ As a general rule, statements made by a witness at another time, though freely admissible to contradict, are not admissible to corroborate. *See Commonwealth v. Swint,* 488 Pa. 279, 288, 412 A.2d 507, 512 (1980) (plurality); *Commonwealth v. Ravenell,* 448 Pa. 162, 168–69, 292 A.2d 365, 368 (1972); *Commonwealth v. Carr,* 436 Pa. 124, 128–29, 259 A.2d 165, 168 (1969).[4] Though often stated as an axiom without rationale, the primary reasons for exclusion of evidence of prior consistent statements are the need to

4. *See also Commonwealth v. Wilson,* 394 Pa. 588, 602, 148 A.2d 234, 242 (1959), *cert. denied* 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 82 (1959); *Crooks v. Bunn,* 136 Pa. 368, 372, 20 A. 529 (1890); *Hester v. Commonwealth,* 85 Pa. 139, 158 (1877); *McKee v. Jones,* 6 Pa. 425, 429 (1847); *Craig v. Craig,* 5 Rawle 91, 97 (1835).

avoid unnecessary repetition of cumulative evidence, and the need to prevent the fabrication of evidence. *See Commonwealth v. Swint, supra*, 488 Pa. at 288, 412 A.2d at 512 (but for the rule, "the door might be open to the fabrication of evidence"); *Commonwealth v. Carr, supra*, 259 A.2d at 168 ("to admit them would permit a party to manufacture evidence for himself"); *Crooks v. Bunn, supra*, 136 Pa. at 371, 20 A. 529 (mere repetition); *Clever v. Hilberry*, 116 Pa. 431, 438, 9 A. 647 (1887) (mere repetition).

■ To the extent that prior consistent statements are offered to prove the truth of the matter asserted therein, they are plainly inadmissible hearsay. However, when they are offered to corroborate in-court testimony, prior consistent statements are not hearsay. *See Commonwealth v. Freeman*, 295 Pa.Super. 467, 477, 441 A.2d 1327, 1332 (1982); *see also Commonwealth v. Stohr*, 361 Pa.Super. 293, 317, 522 A.2d 589, 601 (1987) (Kelly, J., concurring; McEwen, J., joins); Binder, *Hearsay Handbook*, § 2.14, at 49 (2d Ed.1983 & 1987 Supp.); VI *Wigmore on Evidence*, § 1792, at 326–27 (Chadbourne rev. 1976 & 1986 Supp.).

The general rule of exclusion of prior consistent statements, then, is based not upon hearsay grounds but upon a general consensus that the relevance of such evidence to corroborate *unimpeached* testimony is ordinarily outweighed by the danger of fraudulent manufacture of evidence, confusion of issues, undue delay, and needless repetition of cumulative evidence. *See* Graham, *Prior Consistent Statements; Prior Statements of Identification*, 23 Crim.L.Bull. 173, 173–75 (1987); Binder, *supra*, § 2.14 at 49; Graham, *Prior Consistent Statements*, 30 Hastings L.J. 575, 578–82 (1979); Lilly, *Law of Evidence*, § 52, at 181–82 (1978); IV *Wigmore on Evidence*, § 1124 at 255.

■ The general rule precluding corroboration of unimpeached testimony with prior consistent statements is subject to exceptions when particular circumstances in individual cases tip the relevance/prejudice balance in favor of admission. Among the common examples of such exceptions are prior consistent statements which constitute

prompt complaints of sexual assault and prior consistent statements which constitute prior statements of identification. Evidence of a prompt complaint of sexual assault is considered specially relevant because (rightly or not) a jury might question an allegation that such an assault occurred in absence of such evidence. *See Commonwealth v. Freeman, supra,* 441 A.2d at 1332.[5] Prior statements of identification are deemed specially relevant because in-court identifications of the defendant are generally considered to be unconvincing, while out of court identifications are considered more meaningful because they were made when the witness' memory was fresher and there had been less opportunity for corrupting influences to work on the witness' memory. Graham, *supra,* 23 Crim.L.Bull. at 183; *see also Gilbert v. California,* 388 U.S. 263, 272 n. 3, 87 S.Ct. 1951, 1956 n. 3, 18 L.Ed.2d 1178, 1186 n. 3 (1967).

Prior consistent statements may also be considered specially relevant when the witness' status alone is such that his or her testimony may be called into question even in the absence of express impeachment. In *Howser v. Commonwealth,* 51 Pa. 332 (1865), our Supreme Court explained:

5. The ancient assumption that hue and cry follows sexual assaults like smoke follows fire has been discredited by empirical studies in recent years. Evidence is mounting that there are a multitude of actual victims, adult and child, who do not promptly report such assaults. *See e.g.* Lizotte, *The Uniqueness of Rape: Reporting Assaultive Violence to the Police,* 31 Crime & Delinquency 169, 169–90 (1985) (noting that the consensus among researchers is that rape is vastly under-reported, analyzing factors motivating or deterring the reporting of rape, and collecting authorities); Meyers, *The Legal Response to Child Abuse,* 24 J.Fam.L. 149, 169–72 & 181–84 (1985–86) (noting that child sexual abuse is considered to be vastly under-reported, analyzing factors deterring reporting, and collecting authorities). As we come to accept the fact that a victim's delay in reporting such crimes does not legitimately call into question the allegation of abuse, we at the same time find the underlying basis of the hue and cry rationale for the prompt complaint rule eroded. *See Commonwealth v. Stohr, supra,* 361 Pa.Superior Ct. at 311–313 & n. 4, 522 A.2d at 598–99 & n. 4; *cf.* Kenmore, *Admissibility of Extrajudicial Rape Complaints,* 64 B.U.L.R. 199, 210–11 (1985) (noting the erosion of the underlying basis for the inherent negative assumption of the hue and cry rationale). However, evidence of a prompt complaint would nevertheless remain specially relevant to rebut the erroneous negative assumption while society educates itself to the truth of such matters.

Though not formally impeached, this witness as a pardoned convict, testified under circumstances that tended strongly to discredit him. The jury would inevitably regard his testimony with suspicion. It was very proper, therefore, to corroborate him,....

51 Pa. at 340. *See also Commonwealth v. Wilson, supra,* 148 A.2d at 242 (citing the quotation from *Howser* with approval).

Similarly, jurors are likely to suspect that unimpeached testimony of child witnesses in general, and child victims of sexual assaults in particular, may be distorted by fantasy, exaggeration, suggestion, or decay of the original memory of the event.[6] Prior consistent statements may therefore be admitted to corroborate even unimpeached testimony of child witnesses, at the trial court's discretion, because such statements were made at a time when the memory was fresher and there was less opportunity for the child witness to be effected by the decaying impact of time and suggestion. *See Commonwealth v. Stohr, supra,* 361 Pa.Superior Ct. at 315, 522 A.2d at 600.

■ In the instant case, though, we need not rest affirmances of the trial court's decision to admit the evidence of prior consistent statements on these grounds alone. The principle exception to the general rule of exclusion is that prior consistent statements may be admitted to corroborate or rehabilitate the testimony of a witness who has been

6. *See generally* Maddock, *Child Reporting and Testimony in Incest Cases; On the Constructing and Reconstructing of Reality,* 6 Behav.Sci. & L. 201, 201–20 (1988); Quinn, *The Credibility of Children's Allegations of Sexual Abuse,* 6 Behav.Sci. & L. 181, 181–89 (1988); Goodman, *et al., When a Child Takes the Stand: Juror's Perceptions of Children's Eyewitness Testimony,* 11 Law & Hum.Behav. 27, 27–40 (1987); Ross, Miller & Moran, "The Child in the Eyes of the Jury," in *Children's Eyewitness Memory,* at 142–53 (Ceci, Toglia & Ross eds. 1987); Leippe & Romancyzk, "Children on the Witness Stand: A Communication/Persuasion Analysis of Juror's Reactions to Child Witnesses," in *Children's Eyewitness Memory, supra,* at 155–77; *accord Rosche v. McCoy,* 397 Pa. 615, 621, 156 A.2d 307, 310 (1959) ("experience has informed us that children are peculiarly susceptible to the world of fantasy and suggestion"); Saunders, *Judicial Attitudes Toward Child Sexual Abuse,* 70 Judicature 95, 95–98 (1986).

impeached, expressly or impliedly, as having a faulty memory, or as having been induced to fabricate the testimony by improper motive or influence. Binder, *supra*, § 2.14 at 49–51.[7] Admission of prior consistent statements on such grounds is a matter left to the sound discretion of the trial court, to be decided in light of the character and degree of impeachment. *See Commonwealth v. White, supra; Lyke v. Lehigh Valley R.R. Co., supra; Commonwealth v. Stohr, supra,* 361 Pa.Superior Ct. at 315, 522 A.2d at 600; *Commonwealth v. Marino,* 213 Pa.Super. 88, 245 A.2d 868 (1968). It is not necessary that the impeachment be direct; it may be implied, inferred, or insinuated either by cross-examination, presentation of conflicting evidence, or a combination of the two. *See Commonwealth v. Swint, supra; Commonwealth v. Carr, supra; Keefer v. Byers, supra; Commonwealth v. Palskin, supra; Zell v. Commonwealth, supra; Commonwealth v. Stohr, supra; Commonwealth v. Cain,* 358 Pa.Super. 198, 202, 516 A.2d 1252, 1254 (1986). It is generally required, however, that any corroboration offered, including prior consistent statements, be related to the impeachment they are to deny, rebut, or explain; "[t]he wall, attacked at one point, may not be fortified at another." *Commonwealth v. Fisher,* 447 Pa. 405, 415–16, 290 A.2d 262, 268 (1972), *quoting* McCormick, *Evidence,* § 49 (1954).

■ In the instant case, the child victim was subjected to extensive cross-examination. (N.T. 11/1/85 at 33–81). Counsel asked questions designed to establish the child victim's sexual awareness (hence ability to make a false

7. *See e.g. Commonwealth v. Swint, supra; Commonwealth v. Ravenell, supra; Commonwealth v. Carr, supra; Keefer v. Byers,* 398 Pa. 447, 159 A.2d 477 (1960); *Commonwealth v. Wilson, supra; Risbon v. Cottom,* 387 Pa. 155, 127 A.2d 101 (1956); *Commonwealth v. Patskin,* 372 Pa. 402, 93 A.2d 704 (1953); *Commonwealth v. White, supra; Commonwealth v. Westwood,* 324 Pa. 289, 188 A. 304 (1936); *Lyke v. Lehigh Valley R.R. Co.,* 236 Pa. 38, 84 A. 595 (1912); *Crooks v. Bunn, supra; Clever v. Hilberry, supra; Zell v. Commonwealth,* 94 Pa. 258 (1880); *Hester v. Commonwealth, supra; McKee v. Jones, supra; Good v. Good,* 7 Watts 195, 202 (1838); *Craig v. Craig, supra; Henderson v. Jones,* 10 S & R 322 (Pa.1823); *Foster v. Shaw,* 7 S & R 156 (Pa.1821); *Packer v. Gonsalus,* 1 S & R 526 (1815).

charge) arising from unrelated sexual abuse of her by a male relative. (N.T. 11/1/85 at 61-63). Counsel then asked her whether she had "imagined," "dreamed," or "exaggerated" the incident in question based upon what had happened to her previously. (N.T. 11/1/85 at 63-64). Throughout cross-examination, counsel confronted the child victim with the prior inconsistent statements made by her at the first preliminary hearing. Her testimony was also impeached indirectly by appellant's denial that the incident occurred, and the implicit impeachment by the character witness who testified on appellant's behalf. (N.T. 11/1/85 at 117-144); *see Commonwealth v. Stohr, supra,* 361 Pa. Superior Ct. at 315, 522 A.2d at 600; *Commonwealth v. Cain, supra,* 516 A.2d at 1254. The character of this impeachment was such that the trial court could reasonably exercise its discretion to permit admission of evidence of prior consistent statements to corroborate the child victim's impeached testimony.

Appellant contends, however, that such evidence was not admissible because the child victim admitted that she had made the prior inconsistent statements with which her testimony was impeached. Appellant cites *Commonwealth v. White, supra,* in support of this contention. In *White,* our Supreme Court upheld the trial court's exercise of its discretion to exclude evidence of prior inconsistent statements, made *after* a confession was given, which were offered to support the defendant's claim that his confession had been coerced. We note similar statements or holdings in *Commonwealth v. Ravenell, supra,* 292 A.2d at 368-69, *Risbon v. Cottom,* 387 Pa. 155, 158-159, 127 A.2d 101, 105 (1956), and *Parnell v. Taylor,* 266 Pa.Super. 74, 79-81, 403 A.2d 100, 103-03 (1979) (plurality). *White, Ravenell,* and *Parnell* each involve an affirmance of the trial court's exercise of its discretion to exclude the evidence of prior consistent statements offered, rather than a claim that the court abused its discretion in admitting evidence of prior consistent statements. The citation to *White* in *Risbon* is purely *dicta.* We do not find these cases controlling.

■ Prior consistent statements offered to corroborate testimony impeached with evidence of prior inconsistent statements may be offered to *deny, rebut, or explain* any apparent inconsistency between an alleged prior statement and the witness' testimony at trial. *See* Graham, *supra,* 23 Crim.L.Bull. at 175–81; Binder, *supra,* § 2.14 at 52–53; Graham, *supra,* 30 Hastings L.J. at 582–616. When the witness admits that a prior inconsistent statement has been made, prior consistent statements are obviously not relevant to *deny* the acknowledged inconsistencies. Prior consistent statements may, however, still be admitted to *explain* the circumstances and thereby *rebut* the impeaching inferences arising from the acknowledged inconsistency.

In several cases, when the witness had admitted or could not have reasonably denied the fact that a prior inconsistent statement had been made, the appellate courts of this Commonwealth have approved the admission of prior consistent statements made *prior* to the acknowledged inconsistent statement for the purpose of rebutting the impeachment inferences arising from the inconsistency. *See e.g. Commonwealth v. Berrios,* 495 Pa. 444, 451–52, 434 A.2d 1173, 1177 (1981); *Commonwealth v. Fisher, supra,* 290 A.2d at 268 (*dicta*); *Commonwealth v. Westwood, supra,* 188 A. at 311; *McKee v. Jones, supra,* 6 Pa. at 429; *Craig v. Craig, supra,* 5 Rawle at 98. Likewise, evidence of prior consistent statements made *after* an acknowledged prior inconsistent statement has been admitted into evidence when evidence of the prior consistent statements was relevant to support an explanation given for the acknowledged inconsistent statement. *See e.g. Commonwealth v. Swint, supra,* 412 A.2d at 511–12 & nn. 5–6; *Commonwealth v. Bartell, supra,* 136 A.2d at 174–75; *Bank v. Short,* 15 Pa.Super. 64, 69 (1900).

■ In the instant case, the evidence of prior consistent statements, made immediately before and immediately after the prior inconsistent statements with which the child victim's in-court testimony was impeached, were particularly relevant to corroborate her explanation that she made the

inconsistent statements at the hearing because she was afraid of appellant who was present at the hearing and standing five feet away from her. Consequently, we find that the trial court did not abuse its discretion in permitting the admission of evidence of the prior consistent statements.[8]

## IV. COMPETENCY: ASSISTANT DISTRICT ATTORNEY DELANEY

The majority of the divided panel which originally heard this appeal held *sua sponte* that Assistant District Attorney Delaney had been permitted to testify in violation of former Pa.C.Prof.Resp. D.R. 5–101(B) and D.R. 5–102(A).[9] The

8. We note that the statements made by Assistant District Attorney Delaney on cross-examination regarding where appellant stood in relation to the child victim during the first preliminary hearing (five feet away), were likewise admissible to explain the inconsistency and rebut the impeaching inferences arising therefrom. *See Commonwealth v. Jorden*, 333 Pa.Super. 291, 303, 482 A.2d 573, 579 (1984).

9. The rules are provided in pertinent part:

**DR 5–101. Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment**

\* \* \* \* \* \*

(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

**DR 5–102. Withdrawal as Counsel When the Lawyer Becomes a Witness**

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue

panel majority concluded that Assistant District Attorney Delaney's participation in this case as the prosecutor at the preliminary hearings rendered him incompetent to testify at trial, even though the trial was conducted entirely and exclusively by another prosecutor and Assistant District Attorney Delaney appeared at trial solely and exclusively as a witness. Appellant embraces the reasoning of the panel majority in his brief to this Court on reargument.

The dissenting member of the panel opined that the panel majority erred in raising the issue *sua sponte.* He also opined that the ethical rules cited by the majority did not apply because Assistant District Attorney Delaney did not appear in a dual capacity at trial, *i.e.* as advocate and witness. The Commonwealth embraces the dissent's reasoning in its brief to this Court on reargument.

We find that the panel majority erred in raising the issue *sua sponte* and that the ethical rules they cited did not render Assistant District Attorney Delaney incompetent to testify under the circumstances of this case. Our reasoning follows.

## A.

Our Supreme Court has indicated in unequivocal terms that this Court may not raise issues *sua sponte* which were not properly preserved in the trial court. *See Commonwealth v. Capitolo,* 508 Pa. 372, 381–82, 498 A.2d 806, 810–11 (1985); *see also Commonwealth v. Bennett,* 512 Pa. 525, 530, 517 A.2d 1248, 1250–51 (1986). Assistant District Attorney Delaney's alleged incompetence to testify pursuant to Pa.C.Prof.Resp. DR 5–101 and DR 5–102 is nowhere raised or even vaguely suggested in the record of the proceedings in the trial court. Hence, this issue was not properly preserved for review, and must be deemed to have been waived.

the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

&ast; &ast; &ast; &ast; &ast; &ast;

(Superseded 5/1/88).

## B.

Alternatively, and to prevent confusion as to the proper ethical response in such cases, we find it appropriate to set forth reasons why we find Assistant District Attorney Delaney to have been competent to testify and his conduct in this matter to have been entirely proper.[10]

In Pennsylvania, witnesses are presumed competent and it is incumbent upon the party challenging the testimony to establish incompetency. *See Commonwealth v. Riley*, 458 Pa. 390, 393, 326 A.2d 384, 385 (1974); *Commonwealth v. Stohr, supra*, 522 A.2d at 591. Attorneys, including public prosecutors, are not rendered incompetent by the mere fact of their status as attorneys. *See Perry v. Dicken*, 105 Pa. 83, 90 (1884); *Commonwealth v. Gatewood*, 221 Pa.Super. 399, 402–03, 293 A.2d 80, 82 (1972); *Commonwealth v. Van Buskirk*, 155 Pa.Super. 613, 630, 39 A.2d 311, 318 (1944); *cf. United States v. Cerone*, 452 F.2d 274, 288 (7th Cir.1971) (the U.S. Attorney was not disqualified from testifying merely by the fact he held a position of public trust). The suggestion that any witness should be disqualified based upon the fact that they have risen to a position of public trust or esteem seems antithetical to our entire truth determining trial process. Indeed, the more trustworthy a witness has proven himself or herself to be, the more urgent is the need for his or her evidence in order to assist the fact finder to reconstruct as accurately as possible the true facts of the case.

Moreover, it is well settled that even an attorney acting as an advocate at trial is competent to testify on his

---

**10.** Criticism of an attorney's ethical conduct in a published opinion is a common means of reprimanding an attorney who violates ethical standards. Cases such as this, however, highlight the risks involved in imposing such censure outside the process set forth in the Rules of Disciplinary Enforcement adopted in this Commonwealth. *Cf.* Sutton, *The Testifying Advocate*, 41 Tex.L.Rev. 477, 497 (1963) (noting due process concerns arising from censure of attorneys in opinions relating to *perceived* violations of the Advocate–Witness rule); UViller, *Presumed Guilty*, 136 U.Pa.L.Rev. 1879, 1901 (1988) (criticizing the criticism of a prosecutor's conduct in an opinion as a denial of fundamental due process when the prosecutor had neither notice nor an opportunity to explain or defend his conduct).

client's behalf. *See Weiherer v. Werley,* 422 Pa. 18, 26, 221 A.2d 133, 136–137 (1966); *In re Coulter's Estate,* 406 Pa. 402, 409, 178 A.2d 742, 746 (1962).[11] Though it was suggested by way of *dicta* in *Frear v. Drinker, supra,* that based upon English authorities an attorney who had addressed the jury and examined witnesses might thereafter be deemed incompetent to present evidence as a witness for his client, the suggestion was unequivocally rejected in *Follansbee v. Walker, supra.* In *Follansbee,* our Supreme Court noted that the English cases cited in *Frear* had been overruled; the Court then concluded that the question of an advocate's competence to testify on behalf of his client could be regarded as having been settled in favor of competency in both England and Pennsylvania. 72 Pa. at 230–31; *accord* Annotation, *Prosecuting Attorney as a Witness in a Criminal Case,* 54 A.L.R.3d 100, 110–14 (1981 & 1988 Supp.) (collecting cases regarding competency).[12]

Ordinarily, however, appearance of an attorney as both advocate and witness at trial is considered highly indecent and unprofessional conduct to be avoided by counsel and to be strongly discountenanced by colleagues and the courts. *See Weiherer v. Werley, supra,* 221 A.2d at 137; *In re Coulter's Estate, supra,* 178 A.2d at 746; *Teats v. Anderson,* 358 Pa. 523, 530, 58 A.2d 31, 34 (1946); *In re Otto's Estate,* 349 Pa. 205, 211–12, 36 A.2d 797, 799 (1944);

---

**11.** *See also Security Trust Co. v. Stapp,* 332 Pa. 9, 14, 1 A.2d 236, 238 (1938); *Commonwealth v. Smith,* 270 Pa. 583, 587, 113 A. 844, 846 (1921); *Perry v. Dicken, supra,* 105 Pa. at 90; *Hester v. Commonwealth, supra,* 85 Pa. at 158; *Follansbee v. Walker,* 72 Pa. 228, 230–31 (1872); *Linton v. Commonwealth,* 46 Pa. 294, 297 (1863); *Bell v. Bell,* 12 Pa. 235, 236 (1849); *McLaughlin v. Shields,* 12 Pa. 283, 286 (1849); *Johns v. Boulton,* 12 Pa. 339, 342 (1849); *Frear v. Drinker,* 8 Pa. 520, 521 (1848); *Boulden v. Hebel,* 17 S & R 312, 313 (1828); *Miles v. O'Hara,* 1 S & R 32, 33–34 (1814); *Newman v. Bradley,* 1 U.S. (1 Dall.) 240, 241, 1 L.Ed. 118 (Pa.1788).

**12.** The only contrary Pennsylvania authority of which we are aware is the Common Pleas Court decision from 1847 quoted by Wigmore, wherein counsel appears to have been deemed incompetent. VI *Wigmore on Evidence,* § 1911 at 776, 787 (Chadbourne rev. 1976). We have been unable to secure a copy of the full opinion (which has been quoted only in part by Wigmore). Nonetheless, it appears to have been merely an isolated aberration of no precedential weight or authority.

*Security Trust Co. v. Stapp, supra,* 1 A.2d at 236; *Smith v. Smith,* 294 Pa. 347, 348, 144 A. 290, 290 (1928); *McLaughlin v. Shields, supra,* 12 Pa. at 286; *Frear v. Drinker, supra,* 8 Pa. at 521.

One of the original justifications for the ethical rule against permitting an attorney to appear as both advocate and witness in the same trial was the perceived need to preserve the integrity of the judicial process by avoiding even the appearance that an attorney may be manufacturing evidence to support the client's case.[13] This rationale, however, has been strongly criticized, and is generally rejected today.[14]

Other justifications for the Advocate–Witness Rule have been cogently summarized as follows:

EC 5–9 Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or

**13.** *See* Cramer, *Policing Conflicts of Interest,* 1980 Ann.Surv.Am.L. 823, 824 & n. 6 (1980); Enker, *The Rationale of the Rule that Forbids a Lawyer to be Advocate and Witness in the Same Case,* 1977 Am.B. Found.R.J. 455, 462–65 (1977); Howard, *The Attorney as Both Advocate and Witness,* 4 Creighton L.Rev. 128, 145 (1970); Sutton, *The Testifying Advocate,* 41 Tex.L.Rev. 477, 481–82 (1963).

**14.** *See ABA/BNA Lawyer's Manual of Professional Conduct,* § 61:504 at 16–17 (1988) (commentators have rejected the rationale and the ABA Model Code does not offer it as a justification); Note, *The Advocate–Witness Rule,* 52 N.Y.U.L.Rev. 1365, 1390–93 (1977) ("Reliance on an unsubstantiated and incalculable fear of public criticism to justify the advocate-witness rule obscures the often substantial burdens that the rule imposes on clients"); Butler, *The Rule Prohibiting an Attorney from Testifying at a Client's Trial,* 45 U.Cinn.L.Rev. 268, 270–71 (1976) ("Disqualification based on unfounded charges of impropriety can stigmatize the legal profession and undercut, rather than enhance, the public confidence.").

argue the cause of another, while that of a witness is to state facts objectively.

*Pa. Code Prof.Resp.* EC 5–9 (superceded 5/1/88). Though still generally accepted, these ethical considerations are not without limits, exceptions, and countervailing considerations.[15]

It is generally agreed that professional and judicial disapprobation is inappropriate when the anticipated testimony of the advocate is related to uncontested matters, the advocate is called as a witness by opposing counsel, or the necessity for the advocate's testimony arose at a time and under circumstances when a dual capacity appearance would be necessary in the interests of justice. *See Pa. Rules of Prof. Conduct,* Rule 3.7 & Comment; *Pa. Code Prof.Resp.* DR 5–101(B); ABA Formal Opinion 339 (January 31, 1975).[16] We note that our Supreme Court has specifically held that whether it would be appropriate to permit the prosecutor *at trial* to take the stand, testify, and then resume the role of Commonwealth's advocate would depend upon "the surroundings and atmosphere of the trial," *i.e.* the totality of the circumstances. *See Commonwealth v. Smith, supra,* 113 A. at 846.

When a dual capacity appearance is precluded by a proper application of the Advocate–Witness rule, the ethical course of conduct is for counsel to retire from the role of advocate in favor of the role of a witness. *See Weiherer v. Werley, supra,* 221 A.2d at 137, *citing ABA*

---

**15.** *See generally ABA/BNA Lawyer's Manual, supra,* § 61:501 at 13–19 (discussing limits, exceptions, and countervailing considerations and collecting cases and authorities); Cramer, *supra,* 1980 Ann.Surv.Am.L. at 823–25 & n. 2–25 (same); Poteat, *Disqualifying Under the Advocate Witness Rule: Fair or Futile?,* 48 U.Cinn.L.Rev. 794, 794–808 (1979) (same); Brown & Brown, *Disqualification of the Testifying Advocate: A Firm Rule?,* 57 N.C.L.R. 597, 608–613 (1979) (same); Enker, *supra,* 1977 Am.B.Found.R.J. at 455–65 (same); Note, *supra,* 52 N.Y.U.L.Rev. at 1384–97 (same); Bulter, *supra,* 45 U.Cinn.L.Rev. at 268–73 (same); Sutton, *supra,* 41 Tex.L.Rev. at 480–84 (same).

**16.** *See also Weiherer v. Werley, supra,* 221 A.2d at 137; *In re Coulter's Estate, supra,* 178 A.2d at 746; *Teats v. Anderson, supra,* 58 A.2d at 34; *In re Otto's Estate, supra,* 36 A.2d at 800; *Perry v. Dicken, supra,* 105 Pa. at 90; *ABA/BNA Lawyer's Manual, supra,* § 61.514 at 26–28.

*Canons of Ethics,* Canon 19; *Teats v. Anderson, supra,* 58 A.2d at 34; *In re Otto's Estate, supra,* 36 A.2d at 799–800; *Smith v. Smith, supra,* 144 A. at 290; *Bell v. Bell, supra,* 12 Pa. at 236; *Frear v. Drinker, supra,* 8 Pa. at 521. Professor Sutton has succinctly and correctly explained:

> A lawyer, like all other citizens, has a civic duty to testify regarding relevant, unprivileged facts which will aid the court in arriving at a proper judgment. The good citizen testifies whenever his testimony is helpful or of aid to the jury and not merely in the unusual instance when his testimony is really indispensable to prevent an injustice. The real ethical question is whether the useful witness, who should be a witness because his testimony will be helpful, may also be an advocate.

Sutton, *supra,* 41 Tex.L.Rev. at 483–84. Thus, properly understood, the Advocate–Witness Rule is addressed to improper *representation* rather than improper *testimony.* We note that while an attorney should ordinarily retire from advocacy in a case as soon as it becomes foreseeable that he or she may be needed to testify for his or her client, the attorney may remain in a dual capacity role for an interim period when the interests of justice so require. *See Pa.R.Prof.Conduct,* Rule 3.7 & Comment; *Pa.Code Prof. Resp.* E.C 5–10, D.R. 5–101(B), D.R. 5–102; Note, *Ethical Propriety of an Attorney's Testifying on Behalf of His Own Client,* 38 Iowa L.Rev. 139, 142 (1952).

■ The trial court is not without authority to enforce the Advocate–Witness Rule at trial. Though the question had been left open in the early case of *Johns v. Bolton, supra,* 12 Pa. at 340, our Supreme Court has since indicated that the trial court may direct a testifying attorney to withdraw from further advocacy in a case. *See Commonwealth v. Scoleri,* 415 Pa. 218, 235 n. 13, 202 A.2d 521, 530 n. 13 (1964). On the other hand, prosecutors previously associated with the case in a prosecutorial capacity but not appearing as an advocate at trial, like Assistant District Attorney Delaney, have been permitted to testify as witnesses for the prosecution without censure. *See e.g. Com-*

*monwealth v. Scoleri, supra; Hester v. Commonwealth, supra,* 85 Pa. at 158.

 The general rule of vicarious disqualification of a testifying attorney's firm under the subsequently superceded Pa.C.Prof.Resp. D.R. 5–102(B) did not apply to public prosecutor's offices, absent exceptional circumstances. *Cf. Commonwealth v. Miller,* 281 Pa.Super. 392, 422 A.2d 525 (1980); *ABA/BNA Lawyer's Manual, supra,* § 61:510 at 22–23. Moreover, vicarious disqualification in general has been forcefully criticized, and has been severely limited under the new Pennsylvania Rules of Professional Conduct. *See Pa.R.Prof.Conduct,* Rule 3.7(b) & Comment; Kuhlman, *Pennsylvania Considers the ABA Model Rules of Professional Conduct,* 59 Temple L.Q. 419, 424 (1986); *see also* Annotation, *Disqualification of Attorney Because Member of His Firm Is Or Ought To Be Called To Be A Witness,* 5 A.L.R.4th 574, 574–90 (1981 & 1988 Supp.); Brown & Brown, *supra,* 57 N.C.L.Rev. at 608–13; Note, *supra,* 52 N.Y.U.L.Rev. at 1384–97. Hence, there was no reason why Assistant District Attorney Hyman could not replace Assistant District Attorney Delaney as the Commonwealth's advocate at trial, and thereby free Assistant District Attorney Delaney to appear at trial solely in the role of a witness.

 Finally, violation of the Advocate–Witness Rule is generally not deemed a valid basis to reverse a verdict or set aside a judgment in absence of extraordinary circumstances. *See Weiherer v. Werley, supra,* 221 A.2d at 137; *In re Coulter's Estate, supra,* 178 A.2d at 746; *see also* Annotation, *supra,* 54 A.L.R.3d 100–76 (collecting cases); Enker, *supra,* 1977 Am.B.Found.R.J. at 461 ("it is overwhelmingly accepted that the [Advocate–Witness] rule is a rule of ethics solely and is not ordinarily grounds for reversal"); Note, *supra,* 38 Iowa L.Rev. at 140 (violation of the rule is not reversible error). Thus, even if we assumed, *arguendo,* that a violation of the rule had occurred, reversal of appellant's conviction would still not have been appropriate.

Thus, we find the reversal to have been erroneous in three respects: 1) the panel majority was without authority to raise the issue *sua sponte;* 2) no violation of the Advocate–Witness rule in fact occurred; and 3) a violation of the Advocate–Witness rule would not have been proper grounds for reversal even if a violation had occurred. Rather than conducting himself unethically, we find that Assistant District Attorney Delaney exhibited "commendable delicacy" in retiring from the role of advocate prior to trial in order to appear solely in the role of witness at trial. *See Bell v. Bell, supra,* 12 Pa. at 236 (commending similar conduct).

## V.

Next, appellant contends that the aggregate sentence of five (5) to ten (10) year imprisonment imposed was excessive. Appellant asserts that "there was nothing particularly grievous about the incident, except the nature of the charge." (Appellant's Brief at 8, 14). He also claims that the reasons for the sentence were inadequate and that mitigating factors were given inadequate weight. We cannot agree.

 These arguments were waived as appellant failed to preserve them with a proper Pa.R.Crim.P. 1410 motion following resentencing. *See Commonwealth v. Hartz,* 367 Pa.Super. 267, 270, 532 A.2d 1139, 1140 (1987) (*en banc*); *Commonwealth v. Cottman,* 327 Pa.Super. 453, 476 A.2d 40 (1984). Moreover, appellant has failed entirely to provide this Court with a concise statement of reasons for allowance of appeal raising a substantial question as to the appropriateness of the sentence imposed under the Sentencing Code as a whole. *See Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987); *Commonwealth v. Darden,* 366 Pa.Super. 597, 600–05, 531 A.2d 1144, 1146–48 (1987). Furthermore, the contentions are wholly without merit. The statement of reasons for the sentence imposed was adequate. *Commonwealth v. Devers,* 519 Pa. 88, 546 A.2d 12 (1988). The weight to be accorded aggravating and mitigating sentencing factors was within the exclusive prov-

ince of the trial court and, absent extraordinary circumstances not present here, allowance of appeal will not be granted to review a trial court's decision as to the *weight* to be accorded legitimate sentencing factors. *Commonwealth v. Moran*, 369 Pa.Super. 109, 112, 534 A.2d 1103, 1104 (1987). Finally, the aggregate sentence imposed in no way appears excessive; rather, appellant's conduct in abusing the confidence reposed in him as a teacher by sexually assaulting two young students would appear to fully warrant a five to ten year sentence of imprisonment. *Cf.* 42 Pa.C.S.A. § 9718.

## CONCLUSION

Based upon the foregoing, judgment of sentence imposed in the trial court is affirmed.

CAVANAUGH, ROWLEY, WIEAND, BECK and POPOVICH, JJ., concur in the result.